THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* W. A. HARRIS *et al.* Plaintiffs in Error.

*Opinion filed April 23, 1914—Rehearing denied June 4, 1914.*

1. CRIMINAL LAW—*language of section 13 of Criminal Code is sufficient basis for arson indictment.* Section 13 of the Criminal Code, which makes it arson to burn or cause to be burned certain specified buildings or other "building, the property of any other person," authorizes an indictment for burning, or causing to be burned, any building which is the property of another person. (*People* v. *Covitz*, 262 Ill. 514, followed.)

2. SAME—*when an instruction with reference to conspiracy to commit arson is not objectionable.* An instruction stating that "if you believe from the evidence, beyond a reasonable doubt, that defendants, or any of them, together or with others, prior to the fire in question entered into a conspiracy to commit the crime of arson as charged in the indictment, and you further believe from the evidence, beyond a reasonable doubt, that thereafter said conspirators, or any of them, pursuant to said conspiracy and in furtherance thereof, set fire to and burned said building as charged in said indictment, then such defendants, if any, as entered into said conspiracy, are guilty of the crime of arson," does not assume the fact of the conspiracy. (*Bond* v. *People*, 39 Ill. 26, distinguished.)

3. SAME—*when consent of owner to burning of building is not an issue.* Where the charge in the indictment is the burning of the building of another person under section 13 of the Criminal Code, no issue can arise as to consent of the owner unless the accused seeks to acquit himself of criminal intent by proving that the owner consented to the burning, and as the want of such consent is not an element of the statutory definition of arson in Illinois, it is not necessary to aver in the indictment that the burning was without the consent of the owner of the building.

4. SAME—*when instruction does not direct jury to believe testimony of accomplice.* An instruction stating that the jury are the judges of the credibility of an accomplice, and that while the testimony of an accomplice must be received with great caution, still, if the jury are convinced of its truth, they have a right to believe it and it is their duty to do so, is not subject to the objection that it directs the jury to believe and act on the truth of such testimony.

5. SAME—*new trial will not be granted where alleged new evidence is merely cumulative.* Affidavits directed mainly to discrediting a witness for the People in respect to a matter which was disputed on the trial are merely cumulative in their nature and do

not present the character of newly discovered evidence which is necessary to authorize a new trial.

6. SAME—*the question of latitude of cross-examination rests largely with the court.* The cross-examination of witnesses is for the purpose of ascertaining the truth of the matter under investigation and the latitude to be allowed rests largely in the discretion of the trial court, and unless there has been a clear abuse of such discretion the Supreme Court will not interfere.

7. SAME—*when cross-examination as to defendant's knowledge of other fires is not error.* If there is evidence, admitted without objection, that the fire which the defendants are charged with causing was postponed to await the result of another fire, it is not error to cross-examine the defendants as to their knowledge of such fire; and if one of the defendants is a brother of the persons who had another fire, although it is not connected in any way with the fire involved in the case on trial, it is not improper to inquire of him as to his knowledge of such fire.

WRIT OF ERROR to the Criminal Court of Cook county; the Hon. RICHARD E. BURKE, Judge, presiding.

SABATH, LEVINSON & STAFFORD, (WILLIAM S. FORREST, and CHARLES B. STAFFORD, of counsel,) for plaintiffs in error.

P. J. LUCEY, Attorney General, MACLAY HOYNE, State's Attorney, and C. H. LINSCOTT, (FRANK JOHNSTON, JR., and EVERETT JENNINGS, of counsel,) for the People.

Mr. JUSTICE VICKERS delivered the opinion of the court:

Plaintiffs in error, W. A. Harris and Max Covitz, were found guilty by a jury in the criminal court of Cook county, at the August term, 1913, of the crime of arson, and after overruling motions for a new trial and in arrest of judgment the court entered a judgment of guilty and sentenced plaintiffs in error to imprisonment in the penitentiary at Joliet under the Indeterminate Sentence law. This writ of error is sued out to bring the record of their conviction up for review by this court.

The first count of the indictment upon which plaintiffs in error were tried, charged that W. A. Harris, (whose first name is to the grand jurors unknown,) Max Covitz, Morris Nudelman, Harry Brown, Julius Zar and John Danies, (otherwise called John Kubitz, *alias* John Kubiczek,) on the 13th day of May, in the year of our Lord 1910, in said county of Cook, State of Illinois, aforesaid, unlawfully, feloniously, willfully and maliciously did burn a certain building there situate in said county of Cook and State of Illinois, aforesaid, then and there being the property of Solomon Fischman, contrary to the statute, etc. The second and third counts of the indictment were similar to the first, except that they charged the defendants with *causing* said building to be burned. Plaintiffs in error, Harris and Covitz, were the only defendants put upon trial in this case. Defendants Brown, Zar and Danies were witnesses on behalf of the People. Nudelman was granted a separate trial.

Plaintiffs in error were retail merchants, with a store located at 1232 Milwaukee avenue, in the city of Chicago, in which was carried a stock of ladies' wearing apparel. The building consisted of three stories and a basement. Plaintiffs in error's store occupied the first floor. The second and third stories were occupied by a person to whom plaintiffs in error had made a lease and were used by said lessee as a restaurant. The fee simple title of the premises was in Solomon Fischman. Plaintiffs in error were his tenants under a five-year lease. The fire occurred about two o'clock in the morning of May 30, 1910.

Plaintiffs in error entered a motion to quash the indictment. At the close of the evidence for the People, and again at the close of all the evidence, each plaintiff in error moved the court to direct the jury to find him not guilty. After the verdict each plaintiff in error moved to set aside the verdict as to him and to grant him a new trial, and filed numerous affidavits in support of said motion. No specific grounds were assigned either for the motion to quash the

indictment or to direct verdicts of not guilty or for a new trial. Before judgment was entered plaintiffs in error severally moved the court to arrest the judgment as to him, and set up specific grounds for said motions in writing. The substance of the grounds of the motions in arrest of judgment is that no offense is charged in any count of the indictment. All of the aforesaid motions were overruled, and the action of the court in overruling said motions is assigned as error upon the record.

The theory of defendant in error is, that plaintiffs in error, through the agency of Brown and Zar, employed Danies to start a fire in this building, for which plaintiffs in error agreed to, and did, pay said Danies the sum of $700; that the motive of plaintiffs in error was to collect the insurance which was carried upon the stock of goods in said building. If the evidence of Zar, Brown and Danies is accepted as true and the denials of plaintiffs in error rejected as false, the charge was fully proved as laid in the indictment. The testimony for the People shows that about two o'clock in the morning of May 30, 1910, a violent explosion was heard in the building occupied by plaintiffs in error. The explosion blew out the glass front, and was of such force that it carried several dummies used to display ladies' cloaks, out onto the sidewalk, and one of the dummies was blown entirely across the street. Some of the glass from the windows was found sixty feet from the building. Following the explosion fire was discovered in the interior of the store room. Police officers who were in the vicinity at the time the explosion occurred went to the scene of the fire at once and turned in an alarm of fire. They testify that they saw the flames shoot out of the front of the building. According to the testimony of the policemen there were two explosions, about one minute apart; that the first explosion did not tear out the front of the building but started the fire, and that flames and smoke were seen coming out of the front of the building just before

the last loud explosion occurred, which blew out the whole front of the building. The firemen arrived in ten or fifteen minutes, and by them it is shown that upon going into the building they detected an odor like gas or gasoline. At the time the firemen arrived the fire was general throughout the lower room of the building. It is also shown that oil was dripping through holes in the floor, which had been made for the purpose of letting the water from the hose run into the basement. Disregarding the testimony of Brown, Zar and Danies, there is ample evidence in the record to prove, beyond a reasonable doubt, that this fire was of incendiary origin. The stock of goods was insured for $18,-750. Plaintiffs in error claimed to have had a stock valued at $18,838 at the time of the fire. After deducting twenty-five per cent for depreciation and $250 for salvage, the insurance companies settled the loss by paying plaintiffs in error $13,878.54. The value of the stock was one of the disputed questions of fact before the jury. Some of the evidence for defendant in error tended to show that the stock on hand at the time of the fire was worth less than half of the value placed on the stock by plaintiffs in error in their settlement with the insurance companies.

Julius Zar testified that he was a brother-in-law of Joseph Clark and was a solicitor for him in connection with Clark's business as an adjuster of fire losses; that he met Covitz in December, 1909, and that Covitz asked him if he (Zar) could send him a man who would set fire to his place of business, and that Zar agreed with Covitz to send him a man who would do the job. Zar sent Brown to see Covitz, and Brown introduced Danies to Covitz a week or two later. Brown was also a solicitor for Joseph Clark, and he testifies that Zar directed him to take Danies over to see Covitz, and that he did so either the latter part of November or first part of December, 1909; that in a subsequent conversation the price was discussed, and it was suggested that the amount would be about $1000 or $1200.

Later Zar reported that the fire was not going to take place and that Covitz had backed out. Danies corroborates Zar and Brown in regard to these preliminary interviews and testifies to conversations with Covitz in regard to the fire; that he went with Brown to see Covitz in December before the fire, and that Covitz told him that he wanted the entire building destroyed, for the reason that the insurance exceeded the value of the stock of goods; that he asked $1200 for the job, but that it was finally arranged that he was to do the job for $700, $400 of which was to be paid in cash and a note given for $300; that there was some understanding that Brown and Zar were to be paid something in addition to the $700 paid to Danies. He testifies that the reason for postponing the burning of the building in question was that Covitz wanted to wait to see how Nudelman got along with his fire; that he went in to see Covitz at his place of business and was there told that the fire was postponed; that another reason given for postponing the fire was that plaintiffs in error desired to reduce the stock as much as possible by the holiday trade; that there was no abandonment of the purpose to have him burn the building but merely a postponement for the reasons above given; that Covitz told him to procure gasoline and get everything ready for the fire on the night of the 30th of May, and that in pursuance of this arrangement he did procure twenty-five gallons of gasoline and conveyed it to the premises on Sunday, and that Covitz admitted him to the store room, gave him $400 and a key to the front door. He also testified that he secreted himself in the rear of the store building during the afternoon; that he left the place for a time around six o'clock and returned again to the store later in the evening and remained there until the fire was ignited, about two o'clock in the morning; that he distributed the gasoline over the store before the fire was ignited so as to make the combustion as complete as possible; that he had been paid $400 in cash by plaintiff in

error Covitz before the fire, and that afterwards he met Covitz and Nudelman in the rear of a saloon and there received the balance and surrendered the note; that after setting fire to the building he went to his room, and that after he had collected the $300 he returned to New York. The evidence for plaintiffs in error consists of a total denial on their part of the story told by Danies and the other accomplices and of testimony tending to impeach and discredit these witnesses, together with proof of the previous good character of plaintiffs in error.

Without going into a discussion of the testimony in detail, it is sufficient for our purpose to say that the evidence is conflicting. While there are some circumstances given in proof by plaintiffs in error that tend to discredit Danies in some of the details testified to by him in connection with his carrying out the scheme to burn this building, still, on the other hand, he is corroborated in several respects by witnesses that are entirely trustworthy. Under the state of the proof shown by this record it was the province of the jury to determine where the truth of the matter is. The discrediting circumstances proven in regard to Danies are not such as to warrant the jury or this court in concluding that he was entirely unworthy of belief. The court did not err in refusing to direct a verdict of not guilty for want of sufficient evidence.

Plaintiffs in error insist that their motions to quash the indictment, to direct a verdict in their favor and to arrest the judgment should have been sustained on the ground that the indictment did not charge the crime of arson. The indictment was framed under section 13 of the Criminal Code, and charged the burning of a building, without other description. It is strenuously argued by plaintiffs in error that the language of section 13 of the Criminal Code, which makes it arson to burn or cause to be burned any "building, the property of any other person," is not sufficient to base an indictment upon for the crime of arson. All of the ob-

jections urged against this indictment were considered in the case of *People* v. *Covitz*, 262 Ill. 514. Since all these questions have so recently had the mature consideration of this court it is not necessary to re-state our views in this case. For the reasons given in the case above referred to, there was no error in overruling the motion to quash the indictment and the other motions raising the same question.

Plaintiffs in error complain of a large number of the instructions given on behalf of the People. Instruction 35 given for the People is criticised. That instruction told the jury that "if you believe from the evidence, beyond a reasonable doubt, that the defendants, or any of them, together or with others, prior to the fire in question entered into a conspiracy to commit the crime of arson as charged in the indictment, and you further believe from the evidence, beyond a reasonable doubt, that thereafter said conspirators, or any of them, pursuant to said conspiracy and in furtherance thereof, set fire to and burned said building as charged in the indictment, then such defendants, if any, as entered into said conspiracy, are guilty of the crime of arson." The criticism made to this instruction is, that it assumes that the jury will find to be true the first hypothesis of said instruction, and it is argued that to make the instruction accurate there should have been inserted therein after the word "conspirators" the words, "if the jury find that the defendants were engaged in such conspiracy," and that there should have been inserted in said instruction after the words "in furtherance thereof" the words, "if any such conspiracy there was." The objections made to this instruction can not be sustained. The first clause of the instruction requires the jury to believe from the evidence, beyond a reasonable doubt, that the defendants, or some of them, together with others, entered into a conspiracy to commit the crime of arson charged in the indictment. The second clause requires the jury to believe from the evidence, beyond a reasonable doubt, "that thereafter said conspirators, or any of

them, pursuant to said conspiracy and in furtherance thereof, set fire to and burned said building," etc. The words "said conspirators" and "said conspiracy" refer back to the first proposition stated hypothetically in the instruction, which the jury are to find from the evidence, beyond a reasonable doubt. The meaning of the instruction, when read in its entirety, is clear, and we are unable to see how it could by any possibility be construed as assuming the existence of any fact necessary to the application of the rule of law announced therein.

Plaintiffs in error rely on *Bond* v. *People,* 39 Ill. 26, as an authority sustaining their contention in reference to the instruction under consideration. That was a prosecution for an assault to murder. The instruction given in that case was as follows: "If the jury believe, from the evidence, that Bond and Schinn were together and acted in concert at the time the assault to murder was made they should find them guilty equally." The objection to this instruction is apparent. It plainly told the jury that the defendants made an assault to murder, and amounted to an assumption by the court of the fact which the jury were formed to try. This court held that the instruction in the *Bond case* was erroneous for the perfectly clear reason that it assumed as true material facts which should have been stated hypothetically. There is no similarity between instruction 35 given in this case and the one condemned in the *Bond case.* There was no error in giving instruction 35.

Plaintiffs in error make the point that instructions 23, 25 and 33 assume that the owner of the building, Solomon Fischman, did not consent to the burning of his building. Solomon Fischman was not a witness and no testimony was given which tended to prove that he had consented to the burning of the building in question. At common law one could not be convicted of arson for burning his own building, and it follows from this rule that if the owner of a building consented to the burning of his building by an-

other, such other person could not be guilty of arson. Under our statute one may be guilty of a felony for burning his own building where the burning is with an intent to defraud an insurance company, and under section 17 of the Criminal Code one may be guilty of arson if he sets fire to his own building with an intent to burn the building of another person. In a case like the one at bar, where the charge is that the property burned belonged to another, under section 13 of the Criminal Code no issue can arise in respect to the consent of the owner, unless the accused seeks to acquit himself of the criminal intent by bringing forward proof that the owner consented to the burning. The want of consent of the owner to the burning is not an element in the statutory definition of arson in this State, and there is no averment in the indictment, nor is it necessary that there should be, that the burning was without the consent of the owner. The instructions under consideration unnecessarily required the jury to believe that the burning was without the consent of the owner. This language was improperly included in these instructions, since there was no issue before the jury in regard to the consent of the owner to said burning, but the giving of the instructions with this language in them did not harm plaintiffs in error. Even if the burden was upon the prosecution to prove a want of consent, such fact, like any other, might have been established by circumstantial evidence, and if the burden rested upon the People in this case to negative the consent of the owner, the nature of the fire and the circumstances would have justified the jury in finding that the fire was without the consent of the owner.

Instruction 29 given on behalf of the People is also complained of by plaintiffs in error. That instruction related to the testimony of an accomplice. The instruction is free from any misleading tendency. It told the jury that they were the judges of the credibility of an accomplice, and that while the testimony of an accomplice must be received with

great caution, still if the jury are convinced of its truth they have a right to believe it, and it is their duty to do so. It is said that this instruction, in effect, directed the jury to believe and act upon the truth of the testimony given by the witness Danies. The instruction does not so state, directly or inferentially. .

Plaintiffs in error complain of instructions 21; 27, 30, 31, 32 and 36 because, it is said, each of these instructions assumes that the crime of arson is charged in the indictment. Plaintiffs in error in their criticism of these instructions assume that their objections to the indictment are valid. As we have already disposed of the objections to the indictment, the criticism of these instructions need not be further considered. The indictment did contain a charge of arson, and it was not error to tell the jury that such crime was charged in the indictment.

Plaintiffs in error make complaint of the giving of various other instructions on behalf of the People, all of which have had our consideration, with the result that we do not regard any of the objections, other than those already considered, of such importance as to justify us in extending this opinion for the purpose of discussing them in detail. And the same observation may be made with respect to the complaints of plaintiffs in error in regard to the instructions offered by them and refused by the court. The court gave at the request of plaintiffs in error forty-five instructions, which covered every possible phase of the law that had any application to the facts before the jury.

Plaintiffs in error filed in support of their motion for a new trial a large number of affidavits. These affidavits are mainly directed to the question as to the existence or non-existence of a closet or fitting room in the rear of the building that was burned, and were intended to contradict and impeach the witness Danies in his testimony in regard to the place where he concealed himself and the gasoline during the afternoon previous to the fire. These affidavits tend

to show that there was no closet or cabinet or space partitioned off, by a curtain or otherwise, in the rear of said building, as claimed by the witness Danies in his testimony. The existence of such place in the rear of the building was disputed on the trial, and evidence tending to show that Danies and the gasoline could not have been secreted in the building in the manner that he claimed was submitted to the jury. These affidavits were merely cumulative and tended to strengthen the evidence which was introduced to impeach Danies. The court did not err in refusing to grant a new trial on account of newly discovered evidence. The rule is well settled that a new trial will not be granted on account of newly discovered evidence which in its nature is cumulative or impeaching in its character. Such evidence must be of a character that if it had been introduced on the trial it would have been likely to have changed the result. *People* v. *Williams,* 242 Ill. 197; *People* v. *Conners,* 246 id. 9.

Complaint is made that undue latitude was allowed counsel for the prosecution in the cross-examination of witnesses for plaintiffs in error. After the fire plaintiffs in error made statements in regard to the fire to the fire attorney. It was contended by the People that these statements were at variance with their statements on the witness stand and also with the testimony of other witnesses for plaintiffs in error. In this condition of affairs the court permitted counsel for the State to call attention to the statements made by plaintiffs in error which varied from the testimony given by the witnesses, and then to ask whether or not, in view of the contradiction, the witnesses would desire to change their statements. The cross-examination of witnesses is for the purpose of ascertaining what the truth of the matter under investigation is, and the latitude allowed for this purpose rests very largely in the discretion of the trial court, and where there has not been a clear abuse of the discretion this court will not disturb the judgment below.

263 – 27

It is also complained that the court permitted counsel for the State to cross-examine plaintiffs in error in relation to other fires in respect of which the plaintiffs in error were supposed to have had some knowledge or interest. Danies in his testimony stated that one reason for postponing the burning of the building in question was that they wanted to wait and see how Nudelman came out with his fire. The evidence shows that Nudelman did have a fire in February, 1910, and Danies testifies that he set fire to that building. It was not improper to inquire of plaintiffs in error in regard to the Nudelman fire. The evidence in regard to the Nudelman fire was admitted without objection, and it was not an abuse of the right to cross-examine the witnesses to inquire of plaintiffs in error in regard to their knowledge of that fire. The other fire inquired about was one which occurred at the place of business of Max Covitz and Edward Covitz, (the latter a brother of Max,) on Twelfth street. That fire was not in any way connected with the one in this case but it concerned one of the plaintiffs in error, and it was not improper to inquire of him in regard to that fire, as the occurrence of a number of fires on the property of the same person would have a tendency to rebut the theory that they were accidental. Where the same person has a series of fires and collects insurance, it furnishes a basis for an inference, of more or less strength, that the fires were not accidental.

After having given the various assignments of error the consideration which their importance seems to require, we find no error in this voluminous record which requires a reversal of the judgment of conviction.

The judgment of the criminal court of Cook county is affirmed.                                    *Judgment affirmed.*