(No. 22688.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* ARTHUR BISHOP, Plaintiff in Error.

*Opinion filed December 19, 1934—Rehearing denied Feb. 8, 1935.*

Wood & McNeal, for plaintiff in error.

Otto Kerner, Attorney General, Francis C. King, State's Attorney, and J. J. Neiger, (Francis J. Coyle, of counsel,) for defendant in error.

Mr. Justice Farthing delivered the opinion of the court:

Plaintiff in error, Arthur Bishop, (hereinafter called the defendant,) was charged under section 13 of the Criminal Code, (Smith's Stat. 1933, p. 1006; Cahill's Stat. 1933, p. 990;) with setting fire to, burning and causing to be burned on February 7, 1933, a building located at 2431 Sixth avenue, in the city of Moline. Four counts of the indictment alleged the building to be a house, the property of Arthur Bishop and Myrtle Bishop, four alleged the building to be a dwelling house, the property of Arthur Bishop and Myrtle Bishop, four alleged the building to be a house, the property of George W. Benson and Celina Benson, and four alleged the building to be a dwelling house, the property of George W. and Celina Benson. A jury found the defendant guilty of arson, and, after motions for a new trial and in arrest of judgment were made and overruled, he was sentenced to the penitentiary. He has sued out this writ of error to review the record of his conviction in the circuit court of Rock Island county.

The errors relied upon are: That the court erred in the admission of incompetent evidence; that the *corpus delicti* was not proved, and therefore the court should have directed a verdict for the defendant; that the court erred in

allowing the State's attorney to cross-examine the defendant about other fires that had occurred on premises owned by him; that the defendant should have been granted a continuance on account of the absence of a material witness, and that the court erred in refusing to give certain instructions tendered on behalf of the defendant.

It appears that a fire occurred in the night of February 7, 1933, in a frame building located at 2431 Sixth avenue, in the city of Moline. The upper story of the building was occupied by George W. Benson and his wife. On the night of the fire Mrs. Benson had accompanied her husband to the factory where he was employed as a night watchman and no one remained in the building. About 2:00 o'clock in the morning the fire department was called to put out a fire in the house. The chief of the Moline fire department testified that he saw a fire in the living room. There was fire in the ceiling, about the width of two joists, all the way across the room. Flames were breaking out through a cup-board in the corner of the room. After the fire in the living room was extinguished the firemen saw a fire in the wall of the dining room about fourteen feet away. This fire was between the joists, up to the attic line. The joists and the laths between two of the studding were burning. After the fire was extinguished the firemen put the furniture in the front room, or parlor, and covered it with a tarpaulin. They closed the broken windows with storm windows and locked the doors before they left. The fire chief testified that he smelled a strong odor of kerosene when he first entered the house and that the odor was more noticeable in the west bed-room upstairs. The house was insured for $5500, payable to the defendant and his wife. The policy contained a rider making the proceeds payable to the mortgagee, whose mortgage was for $2500. No claim for insurance was ever filed by the defendant on account of this fire. The fire chief also testified that about 5:00 o'clock of the same

morning the fire department was again called to this house. His testimony was that when he entered this time the interior of the room in which they had placed the furniture was in flames, which burned through the floor into the basement. The furniture and woodwork were blistered by the heat. The fire chief said this would indicate that the fire had an oil base. He found papers strewn about the hall which were not there when he and his men answered the first alarm. In his opinion the first fire started the second fire. Other witnesses testified that they noticed a strong odor of kerosene. Mrs. Benson testified that she kept no kerosene on the premises. The fire chief testified further that when he visited the premises at 5:00 o'clock in the morning the side door of the dining room had been forced open in such a manner that it broke off the lock and took some of the woodwork with it.

Mrs. M. A. Jones testified that she lived in the next house west. On the night of the fire she heard a noise which sounded like the breaking of glass. When she awoke later she smelled smoke from the fire next door. The chief of the fire department testified that on the day of the fire he found glass broken in a window to the coal bin, on the west side of the Bishop house. This evidence establishes that this fire was of an incendiary origin, without the aid of the defendant's confession. *People* v. *Harris*, 263 Ill. 406.

The defendant contends that the confession he signed was not voluntarily made and that it was error for the court to receive it in evidence. Lucile Barth, a stenographer, took his statement on March 23, 1933. Walter E. Parlier, a deputy fire marshal, and William Cowley, building inspector for the city of Moline, were present. The defendant signed the statement. A hearing was had on the competency of the confession, out of the presence of the jury. Parlier testified that he subpœnaed the defendant to come before him on March 23, 1933, at 9:00 o'clock. After he had questioned him until about 4:30 o'clock in

the afternoon of that day the defendant confessed. Parlier denied having held out any inducement or hope of reward to secure the confession. He also denied having used any threats or violence. The defendant then produced his witnesses. He and his daughter testified that Parlier had said that if the defendant would confess, Parlier would see that he would be paroled and the whole thing would be kept out of the newspapers, and that the defendant should take the blame because the Bensons were too old to do time in the penitentiary. Parlier was contradicted by Jack Thompson, a news reporter, who said that Parlier told him that Bishop resisted all day but finally reached the point where he was up against a wall and could not find answers to the questions or explain his actions. There was conflicting evidence on the question of whether force and intimidation were used. The defendant also testified that he confessed while in a state of hypnosis. There was evidence of what a man can and will do when hypnotized, and that the defendant had been placed in that state several times and that he was easily hypnotized. The defendant testified that he remembered nothing about making the confession. There was no evidence that Parlier possessed any hypnotic powers.

In *People* v. *Fox,* 319 Ill. 606, we held that all the People's witnesses need not testify before the defense witnesses are called in a preliminary hearing to determine the competency of a confession. We said at page 617: "The order of proof is largely within the discretion of the trial judge. While the burden of showing that no improper inducement existed when the confession was made is upon the prosecution, it is not necessary for the prosecution to produce all its evidence before any evidence is produced on behalf of the accused. After the State has made a *prima facie* case, then the burden of going forward with the proof properly shifts to the accused. (*Sims* v. *State,* 59 Fla. 38, 52 So. 198.) After the accused has made his case the

prosecution may produce evidence in rebuttal to meet that offered against the competency of the confession." This disposes of the defendant's contention that it was error for the People to call but one witness, Parlier, before the defense witnesses were called in the preliminary hearing.

By his confession the defendant said that after his household had retired and his wife had gone to sleep he got out of bed and went to a garage back of the house which was burned and procured two gallons of kerosene. He entered the house by breaking a pane of glass in a basement window. He then sprinkled the kerosene throughout both attics and fastened a cord to some electric wires in the lower attic and ran it down through a hole he made in the ceiling above the basement stairway and set fire to the cord. This was heavy wrapping cord and was soaked in kerosene. It was wrapped around the top of the basement stairway before it was ignited. After lighting it the defendant let himself out of the back door and went home and to bed. He heard the fire engine siren but waited until a neighbor called him before he went to the fire. In the confession he said he had nothing to do with causing the second outbreak of fire.

Deputy fire marshal Parlier, building inspector Cowley and fire chief Hawk made investigations immediately after the fire but found nothing indicating that the fire was of incendiary origin except some shingles which were saturated with kerosene and were in the upper attic. Although the defendant signed the confession on March 23, 1933, the investigators did not find the cord until six days later. They say they found it then in the attic over the one-story part of the house. When this cord was offered in evidence the defendant objected that no proper foundation had been laid for its admission. It was not found until fifty days after the fire. Witnesses for the defendant had examined the house under favorable light conditions in order to estimate the cost of repairing the building and

they did not see this cord. They said if it had been there they would have seen it. A hole had been chopped in the wall between the bed-room and the attic above the first floor, and there was a hole in the roof which admitted light into that attic. They could see without the aid of artificial light. Hawk testified that he was at the house several times and did not see the cord. Cowley testified that he saw the fuse immediately after the fire but said nothing about it until after defendant signed the confession and the investigators went back to search the premises again. After the fire the house was open and several persons had been through it. It was not proper to receive this cord in evidence. The premises had been searched too many times without it being discovered. (*People* v. *Reno,* 324 Ill. 484.) Cowley's statement that he saw it immediately after the fire but said nothing is improbable in the extreme. The facts of the case make it unlikely that the fuse would be left to bear witness against the defendant. He stated in his confession that he wrapped it around the top of the basement stairs and set fire to it, yet the top of the stairs was not scorched and the fuse itself was not burned, although the house was seriously damaged by the fire and the fuse had been soaked in kerosene. This exhibit was important evidence of the incendiary origin of the fire, and we cannot say that the jury disregarded it in finding the defendant guilty.

Reverting to the contention that the confession was incompetent and that the court erred in receiving it in evidence, several inconsistencies exist between the statements it contained and the other facts in evidence in addition to those pointed out. It is not necessary that the inconsistencies be pointed out in detail. These matters affect the weight of the confession rather than its admissibility in evidence. (*People* v. *Fox,* 319 Ill. 606, 618.) The court did not err in holding that the confession was competent and in receiving it in evidence for what it was worth.

It is objected that the State's attorney was given too much latitude in his cross-examination of the defendant. He asked the defendant about other fires that had occurred in houses owned by him. These fires had occurred at different intervals from 1922 down to and including October 6, 1932. He asked the defendant if those fires had been caused by kerosene and if he had not started them. At another point he asked a witness if, while hypnotized, the defendant acted like a fire-bug or fire-fly. The People contend that evidence of other fires on the defendant's premises was admissible to prove that this fire was not an accident but that it was started maliciously. This case falls within the general rule that, on a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent of that for which he is on trial, even though it is a crime of the same sort, is irrelevant and inadmissible. (*People* v. *Brewer,* 355 Ill. 348.) The fires that occurred so long ago would have no probative force with reference to the fire in question. There is no connection between them and this fire as there was in *People* v. *Harris,* 263 Ill. 406. In that case there was evidence to show that before the defendants had started the fire for which they were convicted they had waited to see what the outcome was of an earlier fire set by them and others working with them, and it was held proper to ask the defendant, on cross-examination, what he knew about the previous fire. Here there is no such reason to justify this cross-examination. The injection of these incompetent and immaterial issues into the defendant's trial was clearly prejudicial.

The point is made that the defendant was entitled to a directed verdict because the People failed to prove that the dwelling house was the property of the defendant and his wife. The record does show that the premises were occupied by George W. and Celina Benson, the persons

named as owners in the last eight counts of the indictment. It was pointed out in *People* v. *Farrell,* 349 Ill. 129, and *People* v. *Covitz,* 262 id. 514, that in an indictment for setting fire to or burning a building occupied at the time, it is sufficient to allege that the building was the property of the owner, lessee or occupant. (Smith's Stat. 1933, Crim. Code, div. 1, sec. 19, p. 1006; Cahill's Stat. 1933, p. 991.) This disposes of this contention.

The defendant insists that the court erred in admitting evidence of the fire which broke out at 5:00 o'clock in the morning, because, he contends, it was a subsequent offense that was not alleged in the indictment. The allegation of the indictment was that on February 7, 1933, the defendant "did then and there feloniously, willfully and maliciously set fire to a building, to-wit, a house, located at what is known as 2431 Sixth avenue," etc. The theory of the prosecution was that the second fire was a continuation of the first. The fire chief was permitted to state, without objection, that in his opinion this was the case. There is no evidence that there were two separate and distinct fires, although the record does show the firemen believed the fire was totally extinguished before they left the premises after they had answered the first alarm. In view of the record the point is not well taken.

Since the judgment must be reversed it is not necessary to consider the point made with reference to a refusal of the defendant's motion for a continuance on account of the absence of the witness Jack Thompson.

With reference to the complaint that the twenty-third and twenty-ninth instructions, or one of them, should have been given, it is only necessary to say that their substance was covered by the ninth given instruction.

For the errors indicated, the judgment is reversed and the cause is remanded to the circuit court of Rock Island county for a new trial. *Reversed and remanded.*