THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALBERT BERLAND (Impleaded) *et al.*, Defendants-Appellants.

First District (4th Division)  No. 60932

Opinion filed August 11, 1977.

Harry J. Busch and Sherman C. Magidson, both of Chicago, for appellant Albert Berland.

Edward M. Genson and Sam Adam, both of Chicago, for appellant Louis Wolf.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Joan S. Cherry, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from the circuit court of Cook County. The defendants were convicted after a bench trial of violating section 20—1(b) of the Criminal Code of 1961 (Ill. Rev. Stat. 1969, ch. 38, par. 20—1(b)). Section 20—1(b) provides: "A person commits arson when, by means of fire or explosive, he knowingly: * * * [w]ith intent to defraud an insurer, damages any property or any personal property having a value of $150 or more." Both defendants were sentenced to terms of 1½ to 4½ years in the Illinois State Penitentiary and fined $10,000.

Although both defendants were represented in the trial court by the same attorney, they have each retained separate counsel for the purposes of this appeal. Accordingly, we shall treat each of their appeals individually, as they both raise distinct questions for review.

Defendant Wolf raises six questions for review. (1) whether or not he was denied effective assistance of counsel by the incompetence of his trial counsel and the dual representation of himself and his co-defendant by the same counsel; (2) whether or not the State failed to prove beyond a reasonable doubt he had the "intent to defraud an insurer"; (3) whether or

not there was sufficient evidence to prove the guilt of the defendant where there was no adequate and credible identification of the defendant; (4) whether or not the defendant was denied his due process rights by the failure of the State to disclose the "dual identity" of a key State's witness; (5) whether or not the trial court erred in admitting as substantive evidence prior statements of a nontestifying co-defendant; (6) whether or not the State failed to prove the corporate existence of the company alleged to have been defrauded. Defendant Berland adopts these issues insofar as they are applicable to him and raises two additional questions for review: (1) whether or not his trial counsel had a conflict of interest in that he was representing a co-defendant who was charged with the commission of a felony against the interests of Berland, whether or not his trial counsel was incompetent in failing to ask the trial judge to limit his consideration of statements made by each defendant to that defendant, failing to impeach a principal State's witness, failing to contradict the other principal State's witness concerning his presence at the scene, and failing to introduce evidence to explain the insuring of the building; (2) whether or not the defendant was proven guilty beyond a reasonable doubt.

Since both of the convictions arose out of the same occurrence, one statement of facts will suffice for both defendants. On June 30, 1969, the Illinois Fair Plan Association received an application for insurance covering the building at 715 South Lawndale, Chicago, Illinois, from Albert Berland, the owner. Insurance coverage in the amount of $100,000 was issued on August 13, 1969, by the American Casualty Company. On November 19, 1969, the building at 715 South Lawndale burned. By the testimony of Chicago Fire Department investigators, it is apparent the cause of the fire was arson. On May 11, 1973, almost four years later, the grand jury returned a two-count indictment against Albert Berland for the offenses of arson with the intent to defraud an insurer, and conspiracy to commit arson. Defendant Wolf was charged in another indictment with the offenses of arson, in that he burned a building without the owner's consent, arson with the intent to defraud an insurer, and conspiracy to commit arson. The defendants were tried jointly in a bench trial and were found guilty of arson with the intent to defraud an insurer and of conspiracy to commit arson. The charge of arson, burning a building without the owner's consent, against defendant Wolf was nolle prossed during the trial. A post-trial motion in arrest of judgment on the count of conspiracy to commit arson for both defendants was allowed. Judgment on the finding of guilty on the charge of arson with the intent to defraud an insurer was entered.

The testimony for the State at trial rested primarily on two alleged eyewitnesses to the fire. The trial took place in January of 1974, so the

eyewitnesses were testifying to occurrences which took place more than four years previously. The first eyewitness to testify was Albert Kyles. He identified Wolf as the man he saw carrying a "red" gasoline can into the building on the date of the fire. He also testified he was very unsure about the time of day it was when he saw the defendant. The witness had seen the defendant in the building previously and claimed to have paid the defendant rent for an aunt who lived at one time in the building. The witness could not be sure whether or not it was one year before the fire or several years before the fire, when he had seen the defendant. Neither could he remember when it was that his aunt moved in or when it was that his aunt moved out of the building.

The second eyewitness for the State was Evelyn Mayberry, also known as Elizabeth McGowan, also known as Mrs. Roosevelt McGowan. Ms. Mayberry, as we shall refer to her, testified she saw defendant Wolf enter the building with a "silver" gas can. Ms. Mayberry also testified the locks on the doors of the building had all been removed and the door she saw defendant Wolf enter was unlocked and open. The first fireman on the scene testified the door to the building was secured with a padlock. Ms. Mayberry had previously testified, under the name of Mrs. Roosevelt McGowan, in a civil suit arising out of the same fire, in the United States District Court, Northern District of Illinois, Eastern Division, Case Number 70 C 519. In the Federal court, Ms. Mayberry testified she never, at any time, saw the faces of the men who went into the building.

In addition to the questionable testimony of these two witnesses, the State offered a great deal of documentary evidence. Immediately upon the commencement of the trial, the State offered into evidence eight transcripts of depositions and testimony of the two defendants which had been given in connection with the suit in Federal court. These transcripts, as the State admitted in the trial court, went "far beyond that of what we are concerned with." The trial judge ruled he would only consider the evidence of other or prior fires according to the guidelines established in *People v. Bishop* (1934), 359 Ill. 112. The judge stated his understanding of this case as being "there must be some kind of link-up between the offense in question and the prior offense." Besides the voluminous transcripts offered by the State, they also offered into evidence certain files from housing court concerning a number of buildings which had numerous building code violations. Some of these buildings were owned by one of the defendants, some by another, and most of them by neither of the defendants. These exhibits were: 65 Ch 3915, 3434-36-42 West 15th St. and 1448 South Trumbell, owned by Irving Berland; 66 Ch 5026, 3351 West Douglas Blvd., owned by Irving Koppel; 66 Ch 6858, 715-17 South Lawndale, owned by Julius Leher and William Berke; 67 Ch 842, 1542 South Kedzie, owned by Zelmond Greay; 68 Ch 50081, 4025 West

Monroe, owned by Fred Cooper; 68 Ch 53352, 715-523 South Lawndale, owned by Fred Cooper; 70 Ch 52442, 918 South Springfield, owned by Albert Berland and Robert Watson; 70 Ch 50409, 2248 West Division, owned by Federal Savings and Loan Insurance Corporation, A. E. Berland Real Estate, and Joseph Murro. Defense counsel objected to the introduction of all of these documents.

■■ We shall first consider the contentions of defendant Wolf. The first issue presented for review is the defendant was denied the effective assistance of counsel, due both to the incompetence of trial counsel and the dual representation of both Wolf and his co-defendant Berland. We note at the beginning of trial, defendant Wolf was charged with burning the building of his co-defendant, without the knowledge of the co-defendant. This alone would make it impossible for a single attorney to represent both defendants. The leading United States Supreme Court case in this area is *Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457. In *Glasser* the court stated:

> "This is significant in relation to Glasser's contention that he was deprived of the assistance of counsel contrary to the Sixth Amendment. In all cases the constitutional safeguards are to be jealously preserved for the benefit of the accused, but especially is this true where the scales of justice may be delicately poised between guilt and innocence. Then error, which under some circumstances would not be ground for reversal, cannot be brushed aside as immaterial since there is a real chance that it might have provided the slight impetus which swung the scales toward guilt." 315 U.S. 60, 67, 86 L. Ed. 680, 698, 62 S. Ct. 457.

The Illinois Supreme Court in the case of *People v. Stoval* (1968), 40 Ill. 2d 109, 113, stated:

> "There is no showing that the attorney did not conduct the defense of the accused with diligence and resoluteness, but we believe that sound policy disfavors the representation of an accused, especially when counsel is appointed, by an attorney with possible conflict of interests. It is unfair to the accused, for who can determine whether his representation was affected, at least, subliminally, by the conflict. Too, it places an additional burden on counsel, however conscientious, and exposes him unnecessarily to later charges that his representation was not completely faithful. In a case involving such a conflict there is no necessity for the defendant to show actual prejudice. *Glasser v. United States*, 315 U.S. 60; *Goodson v. Peyton*, (4th cir.), 351 F.2d 905."

In the case at bar, the trial judge should have perceived at the outset of the trial, there existed the possibility of defenses for the defendants which of

necessity would be in conflict. As was said in the case of *United States ex rel. Miller v. Myers* (E. D. Pa. 1966), 253 F. Supp. 55:

"His right to counsel under the Constitution is more than a formality, and to allow him to be represented by an attorney with such conflicting interests as existed here without his knowledgeable consent is little better than allowing him no lawyer at all. See *Gideon v. Wainright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963). This situation is too fraught with the danger of prejudice which the cold record might not indicate, that the mere existence of the conflict is sufficient to constitute a violation of relator's rights whether or not it in fact influences the attorney or the outcome of the case." 253 F. Supp. 55, 57.

■■■ The next issue of defendant Wolf we will consider is whether or not the evidence was sufficient to prove Wolf guilty beyond a reasonable doubt on count two of the indictment, arson with the intent to defraud an insurer, the only count upon which the verdict now stands. The main evidence against the defendant consists of the testimony of the two alleged eyewitnesses and the mass of documents entered into evidence by the State. We will consider the documentary evidence first. The State offered the files from housing court "to demonstrate common scheme, design, and plan on other buildings aside from the one in question." These files concerned a number of other buildings, owned by a number of different people. Examining the actual documents which are in the file, we have found not only is there no link-up to the defendants, and therefore no probative value in the instant case, but many of the complaints were in fact for trivial matters such as garbage collection, putting screens on windows, and other matters which are completely unrelated to the issues of the trial. We feel these exhibits were improperly allowed into evidence and they have improperly influenced the trial judge against the defendants. It was error for the trial judge to consider these exhibits, as they have no relationship to the instant case. As regards the testimony of the two alleged eyewitnesses, they both claim they saw a virtually bald man enter the building carrying a gasoline can. Defendant Wolf was bald from 1964 to 1967. The witnesses were shown a photograph of Wolf taken at this time. However, Wolf underwent a series of hair transplants in 1967 and 1968 and had more hair on the date in question than he did at the time of the trial. Both Kyles and Ms. Mayberry contradict each other as to the time they saw Wolf enter the building. Ms. Mayberry testified in the Federal civil suit she could not see the faces of the men who entered the building. Here, four years later, she claims to be able to identify defendant Wolf. Furthermore, Ms. Mayberry appears in this case under three different names: Evelyn Mayberry, Elizabeth

McGowan, and Mrs. Roosevelt McGowan. The Evelyn Mayberry who testified at trial is the same person as the Elizabeth McGowan who testified in the Federal civil suit that it would be impossible for her to identify the men she said she saw going into the building on the date in question. This is also the same person who appears in the fire investigators' reports as Mrs. Roosevelt McGowan, wherein she also stated she could not identify the men who entered the building. The State should have known these aliases all referred to the same person, however, on the State's list of possible witnesses tendered to the defense before trial, the State listed both Evelyn Mayberry and Elizabeth McGowan as possible witnesses for the prosecution. The State failed to reveal her alias identity to defense counsel and it was only after trial defense counsel realized she was the same woman who appeared in the Federal civil suit with a completely different version of the events on the day in question. The creditability of this witness for the prosecution is highly suspect and the concealment of her dual identity by the State is a questionable prosecutorial practice. This was brought to the court's attention on a post-trial motion, to no avail.

In addition, Wolf presented three witnesses who testified he was downtown with them discussing a business proposition at the time the State's witnesses claim to have seen him enter the building. One of these witnesses for Wolf was an attorney. In the case of *People v. Gardner* (1966), 35 Ill. 2d 564, our supreme court said:

> "The defendant contends that his guilt was not proved beyond a reasonable doubt and we agree. The basic conflict in the evidence is between the strength of the identification testimony and the strength of the alibi. Nothing except the identification by the victim and defendant's proximity to the victim's apartment connected defendant with the crime. This court has often held that: 'In a criminal case it is incumbent upon the prosecution to prove beyond a reasonable doubt not only the commission of the crime charged but also its perpetration by the accused. * * * And while the identification and whereabouts of the defendant at the time of the crime are questions for the jury, yet, where from the entire record there is a reasonable doubt as to the guilt of the accused, a judgment of conviction will not be permitted to stand. (*People v. Ricili*, 400 Ill. 309; *People v. Gold*, 361 Ill. 23.) Where the conviction of a defendant rests upon identification which is doubtful, vague and uncertain, and which does not produce an abiding conviction of guilt, it will be reversed. (*People v. Fiorita*, 339 Ill. 78; *People v. Kidd*, 410 Ill. 271.) Neither can we disregard the evidence of alibi where the sole and only evidence contradicting it rests upon the identity of the defendant as the man

who committed the crime. *People v. Peck*, 358 Ill. 642; *People v. De Suno*, 354 Ill. 387.' *People v. McGee*, 21 Ill. 2d 440, 444." (35 Ill. 2d 564, 571.)

In view of the firm language of our supreme court in these eight cases, we feel the decision of the court in *People v. Gardner* (1966), 35 Ill. 2d 564, is controlling. In the instant case we think the State did not prove the guilt of the defendant beyond a reasonable doubt and accordingly reverse the conviction of defendant Wolf for arson with the intent to defraud an insurer. Having reached this conclusion, we need not consider any of the other points raised by the defendant.

Next we shall consider the issues raised by defendant Berland. The opinion of this court with respect to the first contention raised by the defendant, that he was denied the effective assistance of counsel, has been thoroughly discussed above, with respect to defendant Wolf, and the same applies to defendant Berland, and need not be repeated here. This court feels there was a conflict of interest on the part of trial counsel and it was incumbent on the trial court to raise the issue with respect to both defendants. It should have been clear to the trial court the conflict prevented either defendant from receiving a fair trial.

Defendant Berland's second contention is the State failed to prove him guilty beyond a reasonable doubt. The State argues "they were in a scheme together." The State also makes the flat statement in its brief: "There is absolutely no reason that can be inferred from any testimony as to why Wolf would burn the building without Berland's consent." In fact, the State's entire case against defendant Berland consists of one inference based upon another inference, drawn from a third inference. The first inference is the fact the two men had been friends for some 30 to 35 years. This court feels the need to point out there is nothing inherently criminal in such a situation. The next inference is the fact the two men had invested in various real estate and non-real-estate ventures over a number of years. There is, however, no contention by the State Wolf had any interest in the building in question. The next inference is Wolf was a customer of Berland, buying paint and other supplies from him and, in turn, Berland used Wolf's employees to make repairs in other buildings. That has no bearing on this case. The State makes much of the fact Berland used Wolf as a nominee when he bought the building in order to receive a broker's commission and reduce the actual price he would have to pay to acquire the building. Again, the inference is there is something sinister about the transaction. There is nothing wrong or criminal about such a situation, as it is a very common one in the real estate field. The State produced no direct evidence against Berland except he owned the building, which he readily admitted. There is no evidence of Berland's either burning the building or of his aiding, abetting, or somehow furthering the burning of

his building, and, as the State admits, there is no reason why Wolf would burn the building on his own. The State's entire case against Berland is based on these inferences of normal, legal activity. It is well settled in Illinois you may obtain a conviction in Illinois based solely on circumstantial evidence; however, as the supreme court said in the case of *People v. Wilson* (1948), 400 Ill. 461, 473:

> "In cases where the proof is entirely circumstantial, if there is any reasonable hypothesis arising from the evidence, consistent with the innocence of the defendant, it must be adopted. It is essential to a conviction upon circumstantial evidence that the facts proved be not only consistent with the defendant's guilt, but that they be inconsistent, upon any reasonable hypothesis, with his innocence. *People v. Holtz*, 294 Ill. 143."

In a case similar to the instant case, the United States Court of Appeals discussed the function of a reviewing court in dealing with cases where the proof is entirely circumstantial in nature. In the case of *United States v. Litberg* (7th Cir. 1949), 175 F.2d 20, the court said:

> "The principal contention before this court, urged with vigor and apparent sincerity, is that the evidence is not sufficient to support the judgment. Such a contention, where the proof in support of an essential element of the crime is doubtful and particularly where it depends upon inferences drawn from circumstances in proof, presents a difficult and perplexing problem for a court of review. On the one hand, we must keep in mind that oft repeated rule that the weight and credibility to be attached to testimony of the witnesses is a matter for the trier of the facts and that we are required to take that view of the evidence most favorable to the government. On the other hand, while the trier of the facts is entitled to draw all reasonable inferences from the circumstances in proof, a court of review is charged with the responsibility of determining the reasonableness of such inferences. In other words, an inference may not properly be relied upon in support of an essential allegation if an opposite inference may be drawn with equal consistency from the circumstances in proof. In *United States v. Tatcher*, 3 Cir., 131 F.2d 1002, 1003, the court reversing a conviction based on inferences states: 'To justify conviction of crime where the evidence relied upon is circumstantial in nature the evidence must be such as to exclude every reasonable hypothesis but that of guilt. *United States v. Russo*, 3 Cir., 1941, 123 F.2d 420. As we have seen, the evidence relied upon to sustain the defendant's conviction is as consistent with his innocence as with his guilt.'

In *United States v. Russo*, 3 Cir., 123 F.2d 420, 423, where

knowledge was an essential element of the offense charged, it was held a judgment could not be sustained where the inference of lack of knowledge was as readily deducible as that of knowledge. See also *Isbell v. United States*, 8 Cir., 227 F. 788, 792; *Pierce v. United States*, 6 Cir. 115 F.2d 399, 400; *Hammond v. United States*, 75 U.S. App. D.C. 395, 127 F.2d 752, 753." 175 F.2d 20, 21-22.

■■ In the instant case the trial court specifically found, by granting the motion in arrest of judgment on the conspiracy count, Berland had not conspired with anyone to burn the building. We have examined the record in its totality, some 700 pages of transcript from the trial alone, and can find no evidence to connect the defendant with the burning of this building. The State did not meet its burden of proving the defendant guilty beyond a reasonable doubt. Following the cases cited by our supreme court, as well as the Federal cases cited, we must conclude from the evidence introduced in the trial court there is a reasonable hypothesis from the inferences produced by the State and the evidence is consistent with the defendant's innocence. It is clear the State did not prove defendant Berland guilty beyond a reasonable doubt of arson with the intent to defraud an insurer. Accordingly, the judgment of the circuit court is reversed as to Berland.

Both judgments are reversed.

JOHNSON and LINN, JJ., concur.