(Nos. 50012, 50534 cons.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. ALBERT BERLAND *et al.,* Appellees.

*Opinion filed Dec. 4, 1978.—Supplemental opinion filed on denial of rehearing Feb. 20, 1979.*

292

294

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (Donald B. Mackay, Assistant Attorney General, of Chicago, Lee T. Hettinger and Joan S. Cherry, Assistant State's Attorneys, of counsel), for the People.

Harry J. Busch and Sherman C. Magidson, of Chicago, for appellee Albert Berland.

Richard T. Franch and Eugene R. Wedoff (Jenner & Block, of Chicago, of counsel), for appellee Louis Wolf.

MR. JUSTICE KLUCZYNSKI delivered the opinion of the court:

Defendants, Louis Wolf and Albert Berland, were convicted of arson with intent to defraud an insurer (Ill. Rev. Stat. 1969, ch. 38, par. 20—1(b)) after a joint bench trial in the circuit court of Cook County. Both were sentenced to terms of 1½ to 4½ years in the Illinois State Penitentiary and fined $10,000. The appellate court reversed the convictions on two grounds: that the single, retained counsel could not effectively represent the conflicting interests of the two defendants and that there was insufficient evidence of guilt to sustain the convictions. (52 Ill. App. 3d 96.) We granted the State's petition for leave to appeal under our Rule 315 (65 Ill. 2d R. 315).

On November 19, 1969, a fire occurred in a 12-unit,

three-story apartment building at 715 South Lawndale in Chicago, Illinois, owned by Berland through a land trust at the Lawndale National Bank. Firemen arrived at the scene at 11:15 or 11:30 a.m., and the fire was extinguished by about 12:30 p.m. An arson investigator from the Chicago Fire Department determined that the fire had been set. It had started when an accelerant was poured onto the floor in the bathroom or in the area between the bathroom and living room in a third-floor apartment and ignited.

Berland, through the Lawndale National Bank as trustee, initiated suit against the insurer of the building in the United States district court to recover $35,000 under the fire insurance policy. The insurance company interposed as defenses that Berland had misrepresented his fire-loss history in the insurance application and that the fire was the result of arson. The jury returned a general verdict in favor of the insurance company. The court of appeals reversed on the ground that the misrepresentations in the application were not a defense to the policy since the application was not incorporated in or attached to it. A new trial was required because the general verdict precluded determining whether the jury had accepted the misrepresentation or arson defense, and the court refused to accept the arson defense as a matter of law. *Lawndale National Bank v. American Casualty Co.* (7th Cir. 1973), 489 F.2d 1384.

An Illinois grand jury returned indictments against Wolf and Berland on May 11, 1973, about 3½ years after the fire, while the civil case was pending on appeal in Federal court. Count I charged Wolf alone with knowingly damaging the real property of another without his consent under section 20—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1969, ch. 38, par. 20—1(a)). Count II charged Wolf and Berland together with knowingly damaging a building by means of fire with intent to defraud an insurer (Ill. Rev. Stat. 1969, ch. 38, par. 20—1(b)). Count III

charged both defendants with conspiracy to commit arson (Ill. Rev. Stat. 1969, ch. 38, par. 8–2).

A single, retained attorney entered his appearance on behalf of both defendants. Each defendant waived jury trial on January 14, 1974. Both defendants pleaded not guilty. Berland did not testify. Wolf denied he was present at the time of the fire. During the presentation of the State's case, attorney Jack G. Stein entered his appearance as additional co-counsel for defendant Wolf. Thereafter, at the conclusion of the People's case, count I, charging Wolf with the burning of the building without the owner's consent, was nol-prossed. Additional and separate counsel for each defendant appeared to present post-trial motions. A post-trial motion in arrest of judgment on the conspiracy count for both defendants was allowed on the grounds that the statute of limitations on that count had run (Ill. Rev. Stat. 1969, ch. 38, par. 3–5(b)). Judgment on the finding of guilty on the charge of arson with intent to defraud an insurer was entered.

The State introduced transcripts of depositions and testimony of Wolf and Berland from the civil case in Federal court. They were admitted pursuant to a stipulation but subject to a defense objection to references to prior fires. The trial judge correctly ruled he would consider the prior fires only if there was no remoteness and if there was a linkup between the offense in question and the prior fires, in accord with *People v. Bishop* (1934), 359 Ill. 112, 119-20.

The trial court also admitted into evidence a series of housing court files concerning properties found to be in violation of the Chicago housing code (Municipal Code of Chicago, ch. 78). They were admitted for the limited purpose of showing prior business relationships between Wolf and Berland in the subject and other properties, not to show prior fires. The files themselves or the testimony of Wolf and Berland in the transcripts from the Federal

proceedings indicated that the properties belonged either to one of the defendants, his nominees or aliases, or those whose addresses were businesses owned by Wolf.

In 1966 defendant Wolf had negotiated the purchase of the building at 715 South Lawndale for Berland. Berland had introduced Wolf to the seller as the prospective purchaser and identified himself as the broker. Wolf purchased the property in his name and transferred it to Berland as his nominee. Title was placed in a land trust established by Berland. At one point Wolf's nephew was given an interest in the property as collateral for a loan by Wolf to Berland. The interest was returned to Berland when the loan was paid. "Fred Cooper," an alias used by Berland, was listed as the beneficiary of the land trust at one time. The addresses given for "Fred Cooper" were two of Wolf's business addresses.

Wolf helped manage the property by selecting tenants and collecting rent. He was frequently present in the vicinity of the building. Wolf examined its physical condition, ordered coal for it, and referred contractors to Berland.

In June 1969 Berland applied for fire insurance on the property. The application was purportedly notarized at Wolf's office by Maurice Blumenthal on June 20, 1969. Blumenthal had died in a car accident in September of 1968, and the date noted for the expiration of his notary's commission was in error. The application contained a false, negative answer to a question requesting "the applicant's 5 year loss record for fire." Insurance coverage in the amount of $100,000 was issued on August 13, 1969, by the American Casualty Company. Berland introduced testimony that under the policy he was required to insure the building for $100,000; that was 80% of the "actual cash value" of the structure, which is measured by replacement cost less depreciation of up to 50% of that cost rather than by market value or purchase price.

Berland paid $18,000 for the building and spent approximately $29,000 on repairs.

Prior to the fire the building was two-thirds vacant. Rent revenues had fallen from $650 per month to $250 per month. The building had been cited for 35 violations of the Municipal Code of Chicago. The building was losing money, and Berland had tried to sell it on contract on three occasions. The purchasers reneged.

Albert Kyles was across the street from 715 South Lawndale on the morning of the fire. He observed two white men drive up to the building in a dark station wagon at around 9 or 10 a.m. and park in front of the building. The building was in a largely black neighborhood. One man carried a ladder to the building; the other carried a red gas can. Judging from the way the man walked, the can was full when he entered the building and empty when he left. The men remained in the building for three to four minutes. Shortly after the men left, Kyles saw smoke coming out of the building.

Kyles identified defendant Wolf as the man carrying the gas can. Kyles had seen Wolf on three or four prior occasions at a paint store and another time when he paid Wolf the $130 rent on an apartment his aunt had leased at 715 South Lawndale.

Evelyn Mayberry saw a dark station wagon drive up to 715 South Lawndale on November 19, 1969. Two white men sat in the car for a while apparently looking to see if anyone was coming. She saw one man take a ladder out of the car. A second man took a silver-colored gasoline can from the back of the station wagon. Ms. Mayberry identified the second man as defendant Wolf, whom she had seen on several previous occasions. He had walked around to the back of the building at 715 South Lawndale on the Sunday prior to the fire. On Monday, he removed the locks from the front door. On Tuesday he drove past the building several times. On Wednesday, Wolf entered

the building with the gas can between 9:30 and 10 a.m. Ms. Mayberry went grocery shopping, and when she returned she learned there had been a fire at 715 South Lawndale.

Wolf testified on his own behalf. He stated he owned a station wagon in 1969. Three alibi witnesses testified on behalf of Wolf that they had had a meeting with him on the morning of the fire. Attorney Samuel Siegel testified Wolf was with him from 9:15 a.m. to 1:30 p.m. on November 19, 1969, and that he and Wolf had lunch together. He had no independent recollection of the meeting until he looked at his appointment calendar. The calendar, however, contained no indication of a meeting with Wolf on that day. It indicated only that Siegel had a 12:30 p.m. appointment with a client named Grosso. It did note a meeting with Wolf both two days before and two days after November 19. Ted Allen testified he saw Wolf in Siegel's office on November 19, 1969, and had lunch with Wolf. He had not remembered this meeting until he met with Siegel, Wolf, and the third alibi witness on the morning of the day he testified. The third witness, Anton Caithaimer, testified he saw Wolf at Siegel's law office between 9 a.m. and 1 p.m. on November 19, 1969. He had a cup of coffee with Wolf and Allen at about 12 p.m. Impeachment evidence consisting of time and pay records indicated Caithaimer was teaching school at that time on that day. He had been absent two days earlier.

The appellate court held that since Wolf was charged in count I with burning the building without Berland's consent, it was impossible for a single attorney to represent both defendants. It noted that the trial court should have perceived that there existed the possibility of conflicting defenses, thus it was incumbent upon the trial court to raise the issue *sua sponte* with respect to both defendants.

A defendant must show an actual conflict of interest

manifested at trial in order to prevail in a constitutional claim of ineffective assistance of counsel due to joint representation of co-defendants by a single attorney. (*People v. Durley* (1972), 53 Ill. 2d 156, 159-61; *People v. McCasle* (1966), 35 Ill. 2d 552, 556; *People v. Somerville* (1969), 42 Ill. 2d 1, 9.) Other jurisdictions concur in this position (see *United States v. Mandell* (7th Cir. 1975), 525 F.2d 671, 677, *cert. denied* (1976), 423 U.S. 1049, 46 L. Ed. 2d 637, 96 S. Ct. 774; *United States v. Lovano* (2d Cir. 1970), 420 F.2d 769, 773; *United States v. Boudreaux* (5th Cir. 1974), 502 F.2d 557, 558; *United States v. LaRiche* (6th Cir. 1977), 549 F.2d 1088, 1095, *cert. denied* (1977), 430 U.S. 987, 52 L. Ed. 2d 383, 97 S. Ct. 1687; *United States v. Christopher* (9th Cir. 1973), 488 F.2d 849, 851; *State v. Jeffrey* (1973), 163 Mont. 92, 96, 515 P.2d 364, 367; *cf. United States v. Smith* (10th Cir. 1972), 464 F.2d 194, 197 (holding there must be prejudice)), although there is no consensus as to how strong a showing of conflict is required to establish a denial of the right to counsel. See *Holloway v. Arkansas* (1978), 435 U.S. 475, 484, 55 L. Ed. 2d 426, 434, 98 S. Ct. 1173, 1178.

The record is devoid of any evidence of an actual conflict of interest. Berland argues that count I was an indicium of a fundamental conflict which could not be cured by the fact that the count was nol-prossed. He argues that because a single attorney represented both defendants he could not prepare and try the case to show that Wolf was motivated to burn the building without Berland's assent. Wolf concurs that joint representation precluded the implementation of each defendant's interest in placing exclusive blame on the other.

These arguments are no different from those which can be raised in any instance of dual representation, yet joint representation of co-defendants is not *per se* unconstitutional (*Holloway v. Arkansas* (1978), 435 U.S. 475,

482, 55 L. Ed. 2d 426, 433, 98 S. Ct. 1173, 1178; see *People v. Durley* (1972), 53 Ill. 2d 156, 160; *United States v. Mandell* (7th Cir. 1975), 525 F.2d 671, 677). The defendants merely speculate and attempt to create a conflict of interest through conjecture as to what might have been shown. They point to no actual conflict, and the record reveals none. This court will not disturb a judgment on the basis of hypothetical conflicts. *People v. McCasle* (1966), 35 Ill. 2d 552, 556; see also *Kruchten v. Eyman* (9th Cir. 1969), 406 F.2d 304, 311; *State v. Jeffrey* (1973), 163 Mont. 92, 97, 515 P.2d 364, 367.

Both defendants denied their guilt. Berland entered a simple denial. Wolf presented an alibi. There was no inconsistency in these defenses. Defense counsel effectively cross-examined the eyewitnesses who testified directly against Wolf by questioning the accuracy of their testimony. Count I was nol-prossed before the defense presented its evidence, thus removing any abstract possibility of conflict. Further, separate co-counsel appeared for Wolf before the close of the State's case. The record revealed no basis for either defendant to assert that the other alone burned down the building. The two men were longtime friends. Even after the fire they chose to be represented by the same counsel. The facts are analogous to those in *People v. McCasle* (1966), 35 Ill. 2d 552, where this court found it proper for a single attorney to represent both defendants. McCasle asserted on appeal that his co-defendant might have committed the robbery alone or with someone else, but the record contained no evidence to support such a theory. There was no inconsistency in their defenses. Both defendants denied knowing one another and presented alibi defenses.

*People v. Ware* (1968), 39 Ill. 2d 66, illustrates an instance of conflict, in contrast to facts here. A single attorney was appointed to represent two defendants. One pleaded guilty and testified against the other. There was a

complete antagonism between the defendants mandating a reversal of the conviction. In *United States v. Gaines* (7th Cir. 1976), 529 F.2d 1038, a conflict of interest developed when defense counsel failed to call Gaines as a witness. The failure to call Gaines prevented him from retracting his withdrawn confession which had been introduced without the names of the co-defendants whom Gaines had implicated. It also served to protect his co-defendants, who counsel had represented through part of the proceedings, from the consequences of a cross-examination of Gaines concerning his confession which had implicated them.

The recent decision by the United States Supreme Court in *Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173, does not preclude joint representation. The court held that where, unlike here, appointed defense counsel raises the risk of a conflict of interest, the failure of the trial court to appoint separate counsel or take adequate steps to ascertain whether the risk was too remote to warrant separate counsel deprives the defendants of their right to the assistance of counsel. This was based on the rationale in *Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457. There the court held that for a trial judge to insist upon joint representation in the face of objection undermines the general duty of the trial court to see that the trial is conducted with solicitude for the essential rights of the accused. In *Glasser* the trial court appointed an attorney retained by Glasser to represent his co-defendant over Glasser's objection. Actual instances of conflict appeared during the course of the trial.

By contrast, counsel here was not foisted upon either defendant. Nor does the record reveal any actual conflict. Each defendant selected and retained the trial counsel to represent him. No objection was made to joint representation until after conviction even though additional counsel represented Wolf prior to motions at the close of the

State's case. See *People v. Somerville* (1969), 42 Ill. 2d 1, 9; *State v. Jeffrey* (1973), 163 Mont. 92, 97, 515 P.2d 364, 367.

*People v. Stoval* (1968), 40 Ill. 2d 109, *People v. Kester* (1977), 66 Ill. 2d 162, and *People v. Coslet* (1977), 67 Ill. 2d 127, relied upon by the defendants are not controlling. None involved joint representation of two defendants by a single attorney, and there, unlike here, actual conflicts due to competing commitments by the defense attorney to other current or former clients existed. In *People v. Stoval* counsel and his law firm represented the owner of the jewelry store the defendant was charged with burglarizing. In *People v. Kester* counsel, prior to becoming defense attorney, had worked on the case as a prosecutor. In *People v. Coslet* counsel represented both the defendant who had been charged with murdering her husband and the administrator of the husband's estate. A conflict arose since the estate stood to benefit from a conviction. Furthermore, all three cases involved appointed counsel, rather than retained counsel as here, demanding even closer scrutiny for conflicting interests (*People v. Stoval* (1968), 40 Ill. 2d 109, 113; *People v. Coslet* (1977), 67 Ill. 2d 127, 133; *People v. Kester* (1977), 66 Ill. 2d 162, 166).

This court adopted a *per se* conflict of interest rule in *People v. Stoval* (1968), 40 Ill. 2d 109, 113, which provides that if an attorney's commitments to others undermine his loyalty to the defendant's interest, it is unnecessary to allege and prove prejudice to sustain a finding of a violation of the right to counsel. In formulating that rule this court relied upon *Glasser v. United States* (1942), 315 U.S. 60, 75-76, 86 L. Ed. 680, 702, 62 S. Ct. 457, 467, where it was said:

> "To determine the precise degree of prejudice sustained *** is at once difficult and unnecessary. The right to have the assistance of

counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial."

*Glasser* of course concerned an instance of enforced dual representation of defendants with actual conflicting interests. The record here, however, reveals no actual conflict; thus it is unnecessary to apply the *per se* rule. See also *People v. Ware* (1968), 39 Ill. 2d 66, 68.

Wolf argues that upon the appearance of a possible conflict it is necessary for the trial court to inquire into the nature of the potential conflicts. Some jurisdictions require the trial court to admonish all jointly represented co-defendants about the possible conflicts inherent in dual representation and to inquire whether each defendant has voluntarily and with full knowledge of the consequences decided to accept such representation. If such inquiry is not made, the prosecution must show beyond a reasonable doubt that a prejudicial conflict of interest did not exist to avoid reversal of the convictions for lack of assistance of counsel. (See *Ford v. United States* (D.C. Cir. 1967), 379 F.2d 123, 125, relying on *Lollar v. United States* (D.C. Cir. 1967), 376 F.2d 243, 247; *State v. Olsen* (Minn. 1977), 258 N.W.2d 898, 907-08; *cf. United States v. Lawriw* (8th Cir. 1977), 568 F.2d 98, 104-05 (placing duty on a trial court to make inquiry but holding that a presumption of prejudice does not arise if the trial court fails to make inquiry and refusing to shift the burden to the prosecution); *United States v. Foster* (1st Cir. 1972), 469 F.2d 1, 5 (placing duty of inquiry on the court but only shifting burden of persuasion to the prosecution to show that the existence of prejudice was improbable where inquiry was not made).) At the opposite end of the spectrum, the Seventh Circuit Court of Appeals holds only that the trial court should be watchful for indicia of conflict during trial. Only when an actual conflict appears is it necessary for the trial court to bring the fact of its

existence to the attention of the defendant. (*United States v. Mandell* (7th Cir. 1975), 525 F.2d 671, 677; *United States v. Gaines* (7th Cir. 1976), 529 F.2d 1038, 1043-44.) Other jurisdictions take intermediary positions short of requiring judicial inquiry in all cases of joint representation. See *United States v. Lawriw* (8th Cir. 1977), 568 F.2d 98, 102-03, and cases cited therein; *State v. Jeffrey* (1973), 163 Mont. 92, 98, 515 P.2d 364, 368 (suggesting it would be wise to make such inquiry).

This court has refused an invitation to require trial judges to ascertain that co-defendants' decisions to proceed with one attorney are informed (*People v. Somerville* (1969), 42 Ill. 2d 1, 10). The crucial determination is whether there is a conflict, since absent such conflict there is no threat to a defendant's right to the assistance of separate counsel. Neither *Glasser v. United States* (1942), 315 U.S. 60, 86 L. Ed. 680, 62 S. Ct. 457, nor *Holloway v. Arkansas* (1978), 435 U.S. 475, 55 L. Ed. 2d 426, 98 S. Ct. 1173, indicate that a pretrial inquiry and waiver of separate counsel is mandated in all cases of joint representation. Because joint representation is not *per se* unconstitutional there is no need to require judicial inquiry until the conflict appears. The language in *Glasser* and *Holloway* that it is the duty of the trial judge to see that the trial is conducted with solicitude for the essential rights of the accused is directed specifically to trial court insistence upon joint representation where counsel or the defendant has requested separate representation. Since there was no conflict here, judicial inquiry was not required.

The appellate court concluded there was insufficient evidence to support the convictions. On the basis of the record before us, we do not agree.

Wolf challenges the weight and credibility of the testimony of the two eyewitnesses. However, in a bench trial it is the province of the trial court to determine the credibility and weight of the testimony, to resolve the

inconsistencies and conflicts therein, and to render its decision accordingly. This court will not substitute its judgment on these matters unless the proof is so unsatisfactory that a reasonable doubt of guilt appears. The trial court, unlike the reviewing court, was in a position to observe the witnesses. *People v. Pagan* (1972), 52 Ill. 2d 525, 534; *People v. Lofton* (1977), 69 Ill. 2d 67, 72-73.

The testimony of the two eyewitnesses was largely consistent both internally and when compared with the testimony of the other eyewitness. Both eyewitnesses agreed they saw two men enter the building between 9 and 10 a.m. One man, whom they identified as Wolf, carried a gas can into the building. Both had seen Wolf on several prior occasions lending further credence to their identification of him. Both identified Wolf in court. There were some inconsistencies in the testimony. Kyles said the gas can was red. Ms. Mayberry said it was silver colored. There was some confusion concerning the amount of hair Wolf had on the day of the fire as well as a discrepancy in the testimony about the relative heights of the two men who entered the building. However, it is established that "[a] conviction will not be set aside merely because the evidence is contradictory." (*People v. Guido* (1962), 25 Ill. 2d 204, 208; see also *People v. Akis* (1976), 63 Ill. 2d 296, 298-99; *People v. Pagan* (1972), 52 Ill. 2d 525, 533-34.) The trial judge, in handing down his decision, stated that he was impressed by the credibility of the eyewitnesses and noted that they had no reason whatsoever to lie. We perceive no basis to disturb the findings of the trial court.

The strength of the eyewitness testimony was not diminished by Wolf's alibi defense witnesses. The alibi witnesses' testimony was thoroughly impeached. Ted Allen had no recollection of the date of the meeting until he spoke with Wolf, Caithaimer, and Siegel on the day he testified. Siegel had no independent recollection of the meeting until he looked at his appointment calendar, but

the calendar did not note a meeting with Wolf on that day. Caithaimer was teaching school when he testified he was meeting with Wolf. Siegel testified contrary to Caithaimer and Allen concerning who had lunch with Wolf. The trial judge was not obligated to believe the testimony of the alibi witnesses over the positive identification of the accused. (*People v. Jackson* (1973), 54 Ill. 2d 143, 149; *People v. Catlett* (1971), 48 Ill. 2d 56, 64.) Whether the alibi evidence created a reasonable doubt of guilt was a question primarily for the trial court (*People v. Garkus* (1934), 358 Ill. 106, 111-12), and here the trial judge indicated the alibi evidence did not convince him that the alleged meeting took place.

The appellate court placed undue emphasis on *People v. Gardner* (1966), 35 Ill. 2d 564, 571-73. It is clearly factually distinguishable. There, as here, guilt hinged upon the conflict between the strength of the identification testimony and the strength of the alibi defense. In such cases, the alibi evidence cannot be ignored. However, this court noted that the testimony of a single witness that is positive and credible is sufficient to convict even if it is contradicted by the accused. In that case the identification of the defendant by the complaining witness was weakened by several factors, including inconsistent descriptions of the defendant and the lack of a lineup when the defendant was first identified, while the defendant's alibi was positive and unimpeached. Also, the alibi was not a recent concoction. By contrast the identification here was strong, and the alibi was impeached. Further, the alibi defense was of recent origin. The defense did not explore it until after trial began and several years after the incident.

Wolf argues that the testimony of Mayberry and Kyles is inherently incredible and, therefore, is insufficient to support a conviction. He cites *People v. Dawson* (1961), 22 Ill. 2d 260, 265-66. In that case the witnesses testified

that a police officer went into a hotel taxi office where he was well known and demanded money from a driver at gunpoint in the presence of many witnesses after identifying himself as a police officer. He then remained in the hotel and had a drink at its bar. The witnesses here did not recount a blatantly preposterous story. They testified that two men entered a building. One man carried a gas can, and the other carried a ladder. They were men who had been seen working around the building on prior occasions. Their conduct, therefore, was not extraordinary like the alleged conduct of the defendant in *Dawson*.

Wolf also challenges the identification testimony by Mayberry and Kyles on the grounds that it was suggested by a mug shot of Wolf shown to them before trial. He did not challenge the photographic procedure prior to trial. The witnesses were shown this picture in connection with the civil trial in the United States district court by an attorney for the insurance company before Wolf was indicted. We refrain from addressing the merits of this contention since it has been waived. *People v. Pierce* (1972), 52 Ill. 2d 7, 10.

Berland argues that the evidence against him was circumstantial, and therefore insufficient to support the conviction. It consisted of depositions and transcripts of proceedings from the civil case in the United States district court, housing files, the insurance application and policy, and evidence that the man who apparently notarized the application had died before the date of the application. Yet, even if the evidence was circumstantial, it is clear that it can support a conviction as long as it produces a reasonable and moral certainty that the defendant committed the crime. (*People v. Fletcher* (1978), 72 Ill. 2d 66, 71; *People v. Williams* (1977), 66 Ill. 2d 478, 484-85.) Berland and Wolf were friends and business associates for 30 to 35 years. Wolf was involved in the acquisition and management of the property for Berland. The addresses of

one of Berland's aliases, listed as a beneficiary of the land trust, were business addresses of Wolf. Wolf's nephew was at one point named as a beneficiary as security for a loan from Wolf to Berland. The building was losing money before the fire, and Berland was trying to sell it. He was compelled to take the property back because of the failures of the purchasers to meet the contract obligations. The poor condition in which Berland maintained the building had given rise to an action in the housing court for necessary repairs. There were 35 violations of the Municipal Code of Chicago, including the presence of vermin and structural violations.

Berland's application for fire insurance contained a false, notarized statement of his personal history of fire losses. Berland had brought the application to Wolf to have it notarized. The notary's name and seal were those of a man who had died 9 months before the application was notarized. The evidence indicates an intent to defraud an insurance company. Berland, of course, can be accountable for the offense even though he did not physically set fire to the building (Ill. Rev. Stat. 1969, ch. 38, par. 5–2). We find there was sufficient evidence to support his conviction.

The appellate court determined that the trial court erred in admitting the housing court files on relevancy grounds because the properties were not owned by the defendants. However, all were owned either by one of the defendants or their aliases. Further, the trial court did not consider similar unexplained fires on those properties. The evidence was admitted solely to show the defendants' business relationships in other similar types of property.

Berland contends that the trial court gave undue and prejudicial consideration to the fact that the property was insured for almost three times its initial cost and the cost of subsequent repairs. He argues also that he was prejudiced by his counsel's failure to introduce evidence of the

replacement cost of the building after presenting evidence that insurance is calculated on the basis of replacement cost rather than acquisition cost. However, as the trial court noted, the gist of the fraud was the burning of the building to collect insurance proceeds regardless of the replacement cost and whether the building was overinsured or underinsured.

Berland and Wolf each argue it was error to admit prior statements of their co-defendant. That evidence was admitted pursuant to a stipulation subject only to an objection to references to prior fires, and there is no indication in the record that the trial judge, sitting as the trier of fact, improperly considered the prior statements of one co-defendant as substantive evidence against the other. Under these circumstances there is no reason to deviate from the sound presumption that the court in a bench trial relies only on proper evidence in reaching a determination on the merits (*People v. Gilbert* (1977), 68 Ill. 2d 252, 258-59; *People v. Pelegri* (1968), 39 Ill. 2d 568, 574-75; *People v. Delno* (1966), 35 Ill. 2d 159, 162).

Because of its disposition of the cause, the appellate court did not reach all the issues presented to it, but as noted in *Nelson v. Union Wire Rope Corp.* (1964), 31 Ill. 2d 69, 112-13, "it has frequently been indicated that where this court acquires jurisdiction for any reason, it has jurisdiction to pass upon all questions, except those requiring a weighing of the evidence, proper to be passed upon and disposed of in the case. (*Goodrich v. Sprague,* 376 Ill. 80; *Bowman v. Illinois Central Railroad Co.,* 11 Ill. 2d 186.) Aside from considerations going to the avoidance of multiplicity of appeals, there are in our opinion unique circumstances here which, as a matter of discretion and justice, impel us to use our powers on review to the utmost and to finally dispose of the case." These proceedings arose out of a fire which occurred in 1969 for which the defendants were indicted in 1973. The parties have briefed

the remaining issues of whether retained counsel was competent and whether the State violated due process by listing the witness Mayberry twice in response to discovery, once under her own name and once under the name of her common law husband. Moreover, the record enables us to fully determine these matters. (*County of Cook v. Lloyd A. Fry Roofing Co.* (1974), 59 Ill. 2d 131, 138-39.) We shall therefore address these questions.

Both Berland and Wolf challenge the competency of their retained trial counsel. After an examination of the record in the instant case in light of the applicable test, we cannot say that counsel was incompetent. He conducted discovery, sought to suppress evidence, and vigorously cross-examined the State's witnesses. Wolf also received the services of additional counsel who entered his appearance during the latter part of the presentation of the State's case. Defendants were entitled to competent, not perfect, counsel. *People v. Murphy* (1978), 72 Ill. 2d 421, 438.

Wolf argues, on the basis of *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, that he was denied a fair trial due to the prosecution's failure to notify defense counsel that the witnesses Ms. Mayberry and Ms. McGowen are the same individual. The two names appeared on a list presented to the defense in response to a discovery request for a list of witnesses. The addresses under the two names were the same. The witness had used the name McGowen, her common law husband's name, when she testified in the United States district court but used her own name, Mayberry, when she testified in the criminal action now pending.

The United States Supreme Court held in *Brady* that the prosecution's suppression of a confession by the defendant's companion deprived the accused of due process since the evidence was material to his guilt. By contrast, in the instant case the prosecution had not

suppressed any evidence. Both names were furnished to the defendants. Further, as this court has noted, in determining whether it was error to allow witnesses to testify even though they had not been listed in response to discovery, the function of the list of witnesses is to prevent surprise and afford an opportunity to combat false testimony. (*People v. Steel* (1972), 52 Ill. 2d 442, 450.) In the present case, the defendant was afforded an opportunity to examine the witness under both her names. The double listing did not deprive Wolf of any evidence material to his guilt; thus he was not denied a fair trial. See *United States v. Agurs* (1976), 427 U.S. 97, 49 L. Ed. 2d 342, 96 S. Ct. 2392.

Defendants also contended in the appellate court that the State had failed to prove the corporate existence of the insurance company alleged to have been defrauded. Even if the State failed to offer testimony to establish the insurance company's corporate existence, courts may take judicial notice of its existence since it is a matter of public record. (See *Department of Public Welfare v. Bohleber* (1961), 21 Ill. 2d 587, 593.) Defendants were in no way prejudiced by any failure to prove corporate existence. They were notified of the charges against them and are protected from double jeopardy; the indictment clearly identified American Casualty Company as the insurance company alleged to have been defrauded and enabled the accused to prepare their defenses (*People v. Dickerson* (1975), 61 Ill. 2d 580, 582; *People v. Grieco* (1970), 44 Ill. 2d 407, 409). Defendants are not entitled to reversal of their convictions.

For the reasons stated, the judgment of the appellate court is reversed, and the judgment of the circuit court is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

Supplemental Opinion on Denial of Rehearing

Defendant Albert Berland's petition for rehearing is denied. Defendant Louis Wolf's petition for rehearing calls this court's attention to issues raised in two petitions for relief under section 72 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 72) filed in the circuit court during the pendency of his direct appeal to the appellate court, which was filed on September 27, 1974. The first section 72 petition was filed on March 18, 1975; the second was filed on September 23, 1976, with a supplemental petition filed on October 8, 1976. On motion of the State, the trial court dismissed the first petition on July 18, 1975, on the ground that the issues raised were not properly before the court in the section 72 petition. The memorandum of orders included in the record and the notice of appeal in the second section 72 petition indicate that it was dismissed on February 14, 1977. Wolf prosecuted separate appeals to the appellate court, which consolidated them on its own motion on March 2, 1978. This court, on March 21, 1978, allowed the State's motion to transfer the section 72 appeals to this court and to consolidate them with the direct appeal then pending.

No oral argument was presented to this court concerning the points raised in Wolf's section 72 petitions when the consolidated cases were argued on May 10, 1978. Wolf's petition for rehearing clearly states this but argues that Wolf has been denied his right to have his appeal considered. Without deciding the nature of the asserted right to appeal, we consider whether the trial court erred in dismissing the petitions. The points relied upon are raised in the two sets of appellate briefs transferred to this court without change in substance or caption.

The circuit court properly dismissed the first section 72 petition. A section 72 proceeding is the forum in which

"to correct all errors of fact occuring in the prosecution of a cause, unknown to the petitioner and court at the time of trial, which, if then known, would have prevented the judgment." (*Ephraim v. People* (1958), 13 Ill. 2d 456, 458; see also *People v. Hinton* (1972), 52 Ill. 2d 239, 243.) Since most of the exhibits relied upon in the appellate brief were incorporated in the post-trial proceedings and in the record on direct appeal, a section 72 petition to examine them would be unwarranted. The trial court had already evaluated the exhibits in the post-trial proceedings; it had held that the evidence contained therein either was known or should have been known to the defendant prior to trial and, in any event, did not justify a new trial since it would not have probably changed the result. The trial court had also concluded, after consideration of the exhibits, that trial counsel was not incompetent.

Specifically, the matters raised in Wolf's section 72 exhibits Nos. 2, 4, 5, 6, 7, 9, 14, 21, and 23 were included in the post-trial motion, were argued at the post-trial hearing, and were incorporated in the record on direct appeal. Those exhibits contained police and fire department reports of interviews with testifying and nontestifying witnesses, transcribed statements and a deposition of testifying and nontestifying witnesses, and the Federal testimony of testifying witness Evelyn Mayberry. Variation between Ms. Mayberry's testimony at trial and her prior testimony in the United States district court was raised on direct appeal in this court. The issue of whether Wolf was bald and the defense's failure to introduce photographs of Wolf taken in 1968 and 1969 was also raised in the post-trial motion and at the post-trial hearing. A section 72 petition is not designed to provide a general review of all trial errors nor to substitute for direct appeal. (*People v. Jennings* (1971), 48 Ill. 2d 295, 299; *People v. Mamolella* (1969), 42 Ill. 2d 69, 72; *Ephraim v. People* (1958), 13 Ill. 2d 456, 460.) Points previously raised at

trial and other collateral proceedings cannot form the basis for a section 72 petition. See *Ephraim v. People* (1958), 13 Ill. 2d 456, 459; *Brunswick v. Mandel* (1974), 59 Ill. 2d 502, 504.

The petition argues that the State obtained Wolf's conviction through the suppression of evidence tending to negate his guilt in violation of our Rule 412 (50 Ill. 2d R. 412). However, the issue of the State's alleged suppression of evidence and noncompliance with discovery, including matters specifically raised in the section 72 petitions, were presented to the trial court at the post-trial proceedings and cannot be raised again. The fact that the State did not call all witnesses to the fire was also brought to the attention of the trial court in the post-trial proceedings.

Although a challenge to identification procedures was raised and addressed in the post-trial proceedings and on direct appeal, Wolf again raises the issue in his section 72 petition. Exhibit No. 17 is a hearsay report of interviews with witnesses allegedly conducted by Wolf's investigator after the trial court entered its judgment. The report indicates that after the fire the police showed the witnesses a mug shot of Wolf and inaccurately told them that the man in the photograph had already been arrested and charged. Exhibit No. 20 is a purported affidavit by Ms. Mayberry that someone at the police station pointed Wolf out to her as the arsonist a couple of months after the fire so she could identify him at trial. In response, the State filed two affidavits by Thomas Begg, an Illinois Bureau of Investigation agent, that witnesses Evelyn Mayberry and Albert Kyles told him that they never gave a post-trial statement to Wolf's investigator and that he had never pointed Wolf out to Ms. Mayberry. The State also asserts that Ms. Mayberry's signature on exhibit No. 20 is different from another signature from a month later. The State points out that all three witnesses to whom Wolf's arguments point were known to the defense prior to trial.

Robert Drain and Albert Kyles were on the State's list of witnesses. Ms. Mayberry was in fact interviewed prior to trial. There was nothing to indicate that Wolf was prevented from discovering and raising these matters at trial. (*Glenn v. People* (1956), 9 Ill. 2d 335, 340; see *People v. Colletti* (1971), 48 Ill. 2d 135, 137-38.) Further, the allegations and supporting documents were merely cumulative and would not have prevented the judgment rendered beyond a reasonable doubt. See *Williams v. People* (1964), 31 Ill. 2d 516, 518; *Ephraim v. People* (1958), 13 Ill. 2d 456, 458; *cf. Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.) The two testifying witnesses had seen Wolf prior to the fire as well as on the day of the fire, providing an adequate independent basis for the in-court identification. (See *People v. Williams* (1975), 60 Ill. 2d 1, 10-11.) These exhibits did not present a basis for section 72 relief.

The first petition argues that Wolf's conviction was the result of perjured testimony and relies on the exhibits filed to support the allegations. A section 72 petition can provide a basis for relief from a judgment based on perjury. (*People v. Jennings* (1971), 48 Ill. 2d 295, 298; *People v. Lewis* (1961), 22 Ill. 2d 68, 70-71.) However, the trial court did not err in dismissing the petition since all the inconsistencies in the witnesses' statements charged in the petition as amounting to perjury were before the court in the post-trial proceedings. Counsel for Wolf presented a detailed analysis of the evidence at the post-trial hearing and intimated that the testimony given was false. Furthermore, the allegations in the petition and supporting documents do not support a charge of perjury and therefore offered no basis for an evidentiary hearing. (See *People v. Jennings* (1971), 48 Ill. 2d 295, 298-99; *cf. Withers v. People* (1961), 23 Ill. 2d 131, 135.) An examination of the exhibits reveals no.more than discrepancies in descriptions of defendant and what he was

carrying given by different witnesses and by the same witnesses at different times, and variations in what different witnesses reported they saw, rather than the knowing use of false testimony. This does not indicate perjury. (See *People v. Strother* (1972), 53 Ill. 2d 95, 100-01; *People v. Lagios* (1968), 39 Ill. 2d 298, 301.) In sum, the trial court did not err in dismissing the petition.

The second section 72 petition is barred by the two-year limitations period applicable to section 72 proceedings (Ill. Rev. Stat. 1975, ch. 110, par. 72(3); *People v. Colletti* (1971), 48 Ill. 2d 135, 137.) The petition was filed on September 23, 1976, and the supplement to the petition was filed on October 8, 1976, which was more than two years after the judgment of conviction was entered and the sentence imposed on April 9, 1974. The bar of the statute of limitations is tolled only by legal disability, duress, or fraudulent concealment of the grounds for relief. (Ill. Rev. Stat. 1975, ch. 110, par. 72(3); *People v. Colletti* (1971), 48 Ill. 2d 135, 137; *Withers v. People* (1961), 23 Ill. 2d 131, 133.) Although Wolf, in reply to the State's motion to dismiss, alleged fraudulent concealment and generally argues that the State suppressed evidence, the trial court dismissed the section 72 petition following a hearing on the issue of fraudulent concealment and an examination of exhibits filed in support of the petition. A review of the hearing testimony by the two assistant State's Attorneys who conducted the prosecution indicates no basis on which to conclude that the State fraudulently concealed evidence from the defendant and indicates that the judgment of dismissal is not against the manifest weight of the evidence. The substance of the testimony was that the prosecutors had never seen exhibits Nos. 3, 5, and 6, consisting of an appraisal of fire damage and two fire department reports, until several weeks prior to the hearing on the second petition, and that exhibit No. 2, the fire investigation

report, was made available to defense counsel. In fact, exhibit No. 2 was attached to both the first section 72 petition and the post-trial motion. Fire Marshal Lynch, whose affidavit Wolf obtained in November 1976, was included on the State's list of witnesses.

The bar of the statute of limitations cannot be avoided by asserting that the second section 72 petition was merely a continuation of the first. Attorney Witney conceded at the hearing on the second petition that it was not a continuation of the first. The first proceedings had already terminated at the trial level, and a notice of appeal had been filed on August 16, 1975, more than a year prior to the filing of the second petition.

Even if we put aside the bar of the statute of limitations, an examination of exhibits reveals no factual allegations sufficient to sustain Wolf's charge of perjury. (See *People v. Jennings* (1971), 48 Ill. 2d 295, 299.) The new exhibits indicate only that the fire battalion chief and fire marshal who were present during the fire did not know what caused it and placed the point of origin at a different place than did the fire inspector who examined the premises after the fire and provided evidence at trial that the fire had been set. The fire damage appraisal indicates only that the dollar amount of damage did not correspond directly to the point of origin of the fire and the intensity of the heat in light of the size of the rooms affected and the presence of damage not attributable to the point of greatest intensity of heat. The fire inspector's in-court testimony did not contradict his written fire report. Thus the exhibits failed to support an allegation that the conviction was based on the knowing use of false testimony.

For the reasons stated, the judgments of the circuit court dismissing Wolf's section 72 petitions are affirmed and the petition for rehearing is denied.

*Judgments affirmed;*
*rehearing denied.*