2022 IL App (1st) 210383-U

SECOND DIVISION
February 1, 2022

No. 1-21-0383

NOTICE: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THEODORE KARAVOS, Individually and as Independent Administrator of the Estate of LISA KARAVOS, Deceased, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellant, | ) ) | |
| | ) | No. 2016 L 10878 |
| v. | ) ) | |
| | ) | Honorable |
| NORTHWEST COMMMUNITY HOSPITAL, an Illinois Corporation, RANDALL KAHAN, M.D., Individually, and INTUITIVE SURGICAL INC., a Delaware Corporation, | ) ) ) ) ) | Moira S. Johnson, Judge Presiding. |
| Defendants-Appellees. | ) | |

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court. Justices Howse and Cobbs concurred in the judgment.

**O R D E R**

¶ 1    *Held*: The circuit court's denial of the plaintiff's section 2-1401 petition (735 ILCS 5/2-1401 (West 2018)) seeking to vacate the order dismissing his cause of action for want of prosecution is reversed because equity requires that the plaintiff be permitted to proceed with his claims against the defendants.

¶ 2    This appeal stems from a medical malpractice action filed by the plaintiff, Theodore

Karavos, individually and as independent administrator of the estate of his deceased wife, Lisa Karavos, against the defendants, Northwestern Community Hospital (NCH), Dr. Randall Kahan (Dr. Kahan), and Intuitive Surgical Inc. (Intuitive), which were involved in the treatment of Lisa's cervical cancer prior to her death. The plaintiff's cause of action was dismissed for want of prosecution after his original attorneys failed to appear for a scheduled management conference, and to file the request to reinstate within the requisite 30 days. Represented by new counsel, the plaintiff filed the instant petition pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2020)) seeking to vacate the dismissal of his action. Therein, the plaintiff argued that he should be permitted to proceed with his claims because unbeknownst to him one of his original attorneys was being treated for advanced prostate cancer, which caused him confusion and led to his missing the hearing that resulted in the dismissal for want of prosecution, while the second attorney had long since absconded with client funds and abandoned the firm. The circuit court denied the plaintiff's section 2-1401 petition, finding that the plaintiff had failed to pursue his cause of action with due diligence. The plaintiff now appeals, contending that the circuit court abused its discretion, or in the alternative that principles of equity require that his cause of action be reinstated. For the following reasons, we reverse and remand for further proceedings.

¶ 3                                   I. BACKGROUND

¶ 4        The record before us reveals the following relevant facts and procedural history.

¶ 5        In July 2015, Lisa retained the law firm of Woerthwein & Miller to represent her in a personal injury action against the defendants, NCH, Dr. Kahan and Intuitive. The parties do not dispute that Lisa's case was initially handled by partner Theodore Arthur Woerthwein but that it became the responsibility of partner John Miller, after June 2018, when Woerthwein abandoned

their law firm after absconding with client settlement funds.

¶ 6    In her original July 29, 2015, seven-count complaint, filed by attorney Woerthwein, Lisa alleged that on July 30, 2013, she sustained injuries after undergoing a laparoscopic total hysterectomy, vaginal vault suspension, and a TAP block procedure at NCH, which were performed by Dr. Kahan, who utilized the *da Vinci®* Surgical System, a robotically assisted surgical system manufactured by Intuitive. Among other things, Lisa asserted that the defendants were negligent in: (1) rendering the aid and service required of a physician and a hospital to their patients; (2) failing to safely perform the requisite procedures, (3) failing to train their agents on how to safely operate the *da Vinci®* Surgical System; (4) failing to warn Lisa of the known dangers from the use of that system; and (5) failing to properly market design and manufacture the system without adequate warnings.

¶ 7    On November 3, 2015, the circuit court granted Lisa's motion to voluntarily dismiss her complaint (735 ILCS 5/2-1009 (West 2014)). Exactly one year later, Lisa refiled her lawsuit, adding her husband, Theodore, as a plaintiff and seeking recovery for loss of consortium damages. The complaint again alleged institutional negligence, medical malpractice, and strict and product liability against the three defendants. The complaint attached a section 2-622 affidavit and expert report (735 ILCS 5/2-622 (West 2014))[1] supporting the plaintiff's allegations against the defendants.

¶ 8    On April 23, 2017, Lisa died from cervical cancer. Through attorney Woerthwein, Lisa's

---

[1] This section of the Code provides that in an action where a plaintiff seeks damages based on medical malpractice the plaintiff must provide an affidavit declaring that he or she: (1) has consulted and reviewed the facts of the case with a health professional; (2) reasonably believes that the health professional is knowledgeable in the relevant issues involved in that particular case and who practices in the same specialty as the defendant if the defendant is a specialist; (3) the reviewing health professional has determined in a written report, after a review of the relevant material involved, that there is a reasonable and meritorious cause for filing such an action; and (4) after such a consultation with the health professional, the plaintiff has concluded that there is a reasonable and meritorious reason to file the action. See 735 ILCS 5/2-622 (West 2020).

husband, Theodore, then filed a motion to spread her death of record. After being appointed the administrator of her estate, on November 7, 2017, Theodore filed an amended complaint to included additional claims arising under the Illinois Wrongful Death Act (740 ILCS 180/1 *et seq.* (West 2016)), Illinois Survival Act (755 ILCS 5/27-6 (West 2016)) and the Illinois Family Expense Statute (750 ILCS 65/15 (West 2016)).

¶ 9    On January 22, 2018, Intuitive and NCH filed separate motions to dismiss the amended complaint based on numerous pleading deficiencies. On April 4, 2018, the circuit court granted both motions without prejudice and permitted the plaintiff to file a second amended complaint and section 2-622 report (735 ILCS 5/2-622 (West 2018)) regarding NCH by May 2, 2018. The parties were also ordered to return for a case management conference on June 6, 2018.

¶ 10    On June 6, 2018, the plaintiff was given an extension of time to file his second amended complaint and the case was continued to June 27, 2018, for another management conference.

¶ 11    On June 27, 2018, attorney Woerthwein failed to appear at the scheduled management conference and the circuit court dismissed the plaintiff's case for want of prosecution.

¶ 12    On July 26, 2018, attorney Miller appeared in court for the first time on the plaintiff's behalf and moved to vacate the court's dismissal. In his motion, Miller stated that he "failed to attend because of an internal mix-up between attorneys as to who was going to attend the call." Miller believed that his colleague Woerthwein would attend, while Woerthwein believed Miller would attend. The motion further alleged that counsels' actions were not deliberate or contumacious.

¶ 13    On August 14, 2018, after a hearing, the circuit court granted the plaintiff's motion and vacated its prior order of dismissal. In addition, the court granted the plaintiff's request for leave to file a second amended complaint and a new section 2-622 affidavit and expert report (735 ILCS

5/2-622 (West 2018)) and set the matter for further case management on September 25, 2018.

¶ 14    Later that afternoon, through attorney Miller, the plaintiff filed his second amended complaint and a new section 2-622 affidavit and expert report (735 ILCS 5/2-622 (West 2018)), describing NCH's alleged deficiencies in Lisa's care.

¶ 15    Subsequently, all three defendants filed their answers to the second amended complaint and the parties exchanged written discovery.

¶ 16    On January 17, 2019, the court ordered the parties to provide a firm date for Theodore's deposition, and to return on March 7, 2019, for a status on any outstanding written discovery. Theodore's deposition was completed on April 19, 2019, and the case was tentatively set for trial on November 2, 2020.

¶ 17    On April 26, 2019, the court ordered the parties to set final dates for the completion of all outstanding lay and expert witness depositions and to return on May 23, 2019, for further case management. When attorney Miller failed to appear at that case management conference on May 23, the court entered a second order dismissing the case for want of prosecution.

¶ 18    On June 26, 2019, 34 days after the entry of that order, attorney Miller filed a combined motion to vacate the dismissal order pursuant to section 2-1301 of the Code (735 ILCS 5/2-1301 (West 2018)) and to withdraw as the plaintiff's counsel. In support, Miller stated that he failed to attend the court's status hearing "because of a calendaring error." Specifically, he alleged that he "had two matters pending on that day but both were entered as a single entry," and that this was "a clerical error." In addition, Miller advised the court that he was no longer able to represent the plaintiff because he was undergoing chemotherapy and his partner attorney Woerthwein was no longer practicing at their firm. Miller therefore asserted that as a sole practitioner he could not

continue to handle a case of such magnitude.

¶ 19    On July 9, 2019, the court granted Miller's motion to withdraw as the plaintiff's attorney and set a briefing schedule on his motion to vacate the second dismissal for want of prosecution.

¶ 20    On September 17, 2019, the circuit court struck the plaintiff's motion to vacate on the basis that it lacked jurisdiction as the motion had been filed more than 30 days after the entry of the dismissal order.

¶ 21    On October 15, 2019, the plaintiff, now represented by new counsel (the law firm of Steinberg, Goodman & Kalish) filed the instant section 2-1401 petition (735 ILCS 2/1401 (West 2018)) seeking to vacate the dismissal of his action. The plaintiff asserted that he was entitled to the requested relief because: (1) his second amended complaint stated a meritorious claim against the defendants; (2) he and his former counsel were diligent in prosecuting the case notwithstanding Miller's diagnosis of advanced stage prostate cancer, and Woerthwein's 2018 abandonment of the law firm; and (3) he was diligent in filing his section 2-1401 petition. In addition, the plaintiff asserted that regardless of any lack of due diligence the principles of equity supported the reinstatement of his claims. In support, the plaintiff attached, *inter alia*: (1) Attorney Registration and Disciplinary Commission (ARDC) records confirming Woerthwein's disbarment on May 21, 2019, for misappropriation of $237,000 in client settlement funds; and (2) affidavits from Miller and himself.

¶ 22    In his affidavit, Miller, who was 70 years old, attested that he is a former partner of the now dissolved law firm of Woerthwein & Miller. He stated that in 2012 he was a semi-retired, non-equity partner, who spent eight months out of the year outside the United States. In April 2018, Miller was diagnosed with prostate cancer and returned to Chicago, whereupon he learned that Woerthwein had abandoned their law firm and that the firm was "broke." According to Miller,

after an associate filed a complaint with the ARDC, Woerthwein was eventually disbarred on May 21, 2019.

¶ 23    Miller further averred that when he arrived at the firm in April 2018, all the firm's attorneys and staff had left. With the help of a single unpaid part-time associate, Miller attempted to transfer as many cases as he could to other law firms and continued to work on the ones that remained. Miller assumed responsibility for the plaintiff's case in June 2018.

¶ 24    Miller attested that throughout his representation of the plaintiff, he received surgical, radiation and chemotherapy treatment for his advanced prostate cancer. He stated that the chemotherapy caused him to suffer "mental confusion, memory loss, and other cognitive and physical deficits." In addition, he pointed out that "confusion and tiredness are documented side effects of" Firmagon, the chemotherapy agent that he was taking.

¶ 25    Miller acknowledged that he was aware that the plaintiff's case was more than he could handle and averred that he both sought help with and attempted to transfer the case to another law firm but without success.

¶ 26    Miller further admitted that he did not inform the plaintiff about his illness, and instead continued to reassure him that the case was proceeding according to schedule. In addition, Miller claimed that he continued to "diligently" represent the plaintiff. As Miller explained, among other things, he completed written discovery and prepared and produced the plaintiff for his deposition. In addition, on May 22, 2019, he contacted Theodore about the possibility of disclosing additional family members as lay witnesses. Miller also stated that in May 2019, counsels were amid discussions regarding dates for the physicians' depositions and that therefore "no one would have thought [he] was not prosecuting the case."

¶ 27    Miller stated, however, that because of his "declining cognitive, mental and physical

health," he made a "docketing error" and failed to appear at the May 23, 2019, management conference. He stated that it had been a long time since he had to keep his own calendar and he "included two entries as one and after an initial court appearance thought [he] was done." As a result of this failure, the plaintiff's case was dismissed for want of prosecution. Miller stated that he was never sent a circuit court postcard for this dismissal but acknowledged that opposing counsel circulated an email with the order, noting that he failed to "observe" it "at the time."

¶ 28    Upon realizing the case had been dismissed, it became apparent to Miller that because of his declining health he could no longer represent the plaintiff. He therefore immediately filed a motion to vacate the dismissal order and to withdraw as counsel.

¶ 29    Miller stated that he first told the plaintiff about his illness on June 26, 2019, when he informed him that the case had been dismissed for want of prosecution and that he was withdrawing as his counsel.

¶ 30    Correspondingly, in his own affidavit, the plaintiff attested that he was "completely unaware" that Woerthwein had abandoned the law firm, and that when Miller took over his case in June 2018, he was receiving treatment for prostate cancer, which purportedly caused him to have memory loss, confusion, and other cognitive defects. The plaintiff stated that he first became aware of Miller's cancer, and his cognitive deficiencies on June 26, 2019, when Miller informed him that his case had been dismissed for want of prosecution because of a docketing error and that he was withdrawing from the case because he had cancer.

¶ 31    According to the plaintiff, during Miller's representation, he regularly communicated with Miller and was repeatedly reassured that his case was "proceeding as scheduled." For example, he met with Miller to prepare for his April 19, 2019, deposition, after which on May 22, 2019, Miller

asked him if he wanted to name any additional family members as potential trial witnesses.

¶ 32    The plaintiff further averred that Miller assured him that he would vacate the dismissal order. However, when the plaintiff appeared in court on July 9, 2019, he learned that the order could not be vacated because the motion was filed outside of the requisite 30 days. The plaintiff immediately began searching for new counsel to determine his legal remedies. In August 2019, he contacted, among others, the law firm of Steinberg, Goodman & Kalish and was informed that the firm would represent him only after an independent evaluation into the merits of his underlying medical malpractice claim. The plaintiff ultimately retained Steinberg, Goodman & Kalish on September 18, 2019.

¶ 33    In response to the plaintiff's section 2-1401 petition, all three defendants filed motions to dismiss arguing that reinstatement of the action was improper because the plaintiff had failed to exercise due diligence in prosecuting his underlying medical malpractice action. The defendants argued that the plaintiff's newly made assertions about Woerthwein's abandonment of the firm and Miller's cancer diagnosis contradicted Miller's earlier explanations for his failure to comply with numerous court orders in the underlying case, including his failure to timely file an amended complaint. The defendants further observed that this was not the first time that counsel had failed to appear at a court hearing, nor the first time the case was dismissed for want of prosecution. In addition, they noted that while the case was originally filed in July 2015, it was not until September 2018 that the plaintiff supplied an affidavit attesting to the merits of his action against NCH as required under section 2-622 of the Code (735 ILCS 5/2-622 (West 2018)). In addition, even though the case had been docketed for over three years, prior to the second dismissal for want of prosecution, the only deposition taken was that of the plaintiff. Finally, the defendants noted that Miller failed to timely move to vacate the second dismissal even though he acknowledged receipt

of the dismissal order.

¶ 34    The defendants further argued that contrary to the plaintiff's position, Miller's illness did not constitute "extraordinary circumstances" warranting the relaxation of the due diligence requirement because Miller's actions were mere mistakes. In addition, the defendants asserted that Miller's claims of memory loss and confusion resulting from his chemotherapy treatments were not supported by an affidavit of any of his treating physicians and were therefore too unsubstantiated to serve as a basis for any exercise of the court's equitable powers.

¶ 35    In his reply, the plaintiff initially asserted that Miller's affidavit was "unrefuted," and that Miller could testify to his "personal observations regarding his own physical and mental health." Accordingly, the plaintiff argued Miller did not need to provide any medical expert testimony to substantiate his claims of mental confusion and tiredness.

¶ 36    In the alternative, however, the plaintiff attached: (1) an affidavit of oncologic urologist Dr. Brian Helfand; and (2) several medical journal articles discussing possible "link[s] between cognitive impairment" and the chemotherapy received by Miller. In his affidavit, Dr. Helfand, who had not treated the plaintiff, attested that based on his oncological experience men receiving Firmagon chemotherapy treatment for prostate cancer "can experience fatigue, memory loss, and cognitive impairment."

¶ 37    On October 21, 2020, the circuit court held a hearing on the plaintiff's section 2-1401 petition (735 ILCS 5/2-1401 (West 2018)). The court entertained arguments by counsels but did not take any additional evidence. Treating the defendants' motions to dismiss as responses to the plaintiff's petition to vacate, the court denied the plaintiff's section 2-1401 petition, finding that the "totality of the circumstances" showed a lack of diligence in the plaintiff's prosecution of the

10

original action.

¶ 38    On November 19, 2020, the plaintiff filed a motion to reconsider, arguing that the court had erred in its application of existing law because it declined to find that Miller's cancer diagnosis and Woerthwein's abandonment of the law firm qualified as "reasonable excuses" to justify vacating the dismissal.

¶ 39    In addition, the plaintiff offered two pieces of "newly discovered" evidence, which he asserted required the court's reconsideration of his petition. First, the plaintiff attached a November 17, 2020, letter from Miller's primary care physician, Dr. Nadira Alikhan, which had previously been unobtainable without Miller's permission. According to Dr. Alikhan's letter after Miller's March 2018 diagnosis of advanced prostate cancer, Miller was treated with radiation and androgen deprivation therapy (Firmagon), which caused him to suffer fatigue, memory issues, and confusion. The letter noted that Miller had complained about these side effects in 2018 and 2019. Moreover, the letter concluded that Miller's failure to attend the 2019 case management conference, which resulted in the dismissal of the plaintiff's case, was directly caused by his cancer treatment.

¶ 40    Second, the plaintiff attached a notice from Miller's malpractice insurance (Minnesota Lawyers Mutual Insurance Company) confirming the cancellation of his coverage beginning on May 15, 2018. The plaintiff argued that this notice demonstrated that absent the reinstatement of his cause of action, he would have no "legal recourse" because "[w]ithout insurance, the costs of proving the underlying case (medical malpractice and products liability) would far exceed what [he] could recover" from Miller.

¶ 41    In their responses, the defendants argued that the court had properly applied existing law and that the plaintiff had failed to explain why the two pieces of purportedly "new evidence" were

not discoverable by him prior to the filing of his section 2-1401 petition.

¶ 42　After a hearing, on March 8, 2021, the circuit court denied the plaintiff's motion to reconsider. The court found that Dr. Alikhan's letter was not "new evidence" because the plaintiff could have obtained it over a year earlier when he filed his section 2-1401 petition and that Miller's "lack of [malpractice] insurance coverage was something that [was] irrelevant" to the court's consideration. The court also held that it correctly applied Illinois law in denying the plaintiff's petition. The plaintiff now appeals.

¶ 43　　　　　　　　　　　　　　　II. ANALYSIS

¶ 44　On appeal, the plaintiff contends that the circuit court abused its discretion in denying his section 2-1401 petition and that, regardless, the principles of equity require that he be permitted to proceed with his claims. For the following reasons, we agree.

¶ 45　Section 2-1401 of the Code provides a comprehensive statutory procedure by which final orders, judgments, and decrees may be vacated "after 30 days from the entry thereof." 735 ILCS 5/2-1401 (West 2018). Ordinarily, the purpose of a section 2-1401 petition is to enable a party to bring facts to the circuit court's attention, which if known by the court at the time it entered the final order or judgment, would have prevented the entry of that judgment or order. *Warren County Soil and Water Conservation Dist. v. Walters*, 2015 IL 117783, ¶ 31. To be entitled to relief under section 2-1401 the plaintiff must affirmatively set forth specific factual allegations establishing: (1) the existence of a meritorious claim; (2) due diligence in presenting his claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition. *McGinley Partners, LLC v. Royalty Properties, LLC*, 2018 IL App (1st) 172976, ¶ 26; see also *Smith v. Airoom Inc.*, 114 Ill. 2d 209, 220-21 (1986). " 'The quantum of proof necessary to sustain a section 2-1401 petition is a preponderance of the evidence.' " *McGinley Partners*, 2018

IL App (1st) 172976, ¶ 26 (quoting *Airoom*, 144 Ill. 2d at 221).

¶ 46    Whether a section 2-1401 petition should be granted lies within the sound discretion of the circuit court, "depending on the facts and equities," and will not be disturbed absent an abuse of discretion. *Airoom*, 114 Ill. 2d at 221. "A circuit court abuses its discretion when its ruling is arbitrary, fanciful, unreasonable, or where no reasonable person would take the view adopted by the trial court." (Internal quotation marks omitted.) *Bank of America, N.A. v. Adeyiga,* 2014 IL App (1st) 131252, ¶ 116.

¶ 47    In the present case, the parties agree that the plaintiff has met the first and third elements of a successful section 2-1401 petition, namely, that his underlying wrongful death/medical malpractice action against the defendants has merit, and that he diligently pursued his section 2-1401 petition. The parties, disagree, however, as to whether the plaintiff diligently pursued the underlying action.

¶ 48    The defendants assert that the circuit court properly determined that the plaintiff failed to diligently pursue his action. They point out that: (1) it took the plaintiff almost three years after the filing the original complaint in 2015 to obtain a section 2-622 expert report (735 ILCS 5/2-622 (West 2018)) against NCH; (2) the case was already dismissed for want of prosecution in 2018 after the plaintiff's attorneys failed to appear in court to timely file the second amended complaint; (3) only one deposition was taken in the entire case; and (4) the plaintiff's attorney failed to timely file a motion to vacate the instant dismissal for want of prosecution even though he was sent a notice of that dismissal by opposing counsel.

¶ 49    The plaintiff, on the other hand, asserts that attorney Miller's cancer and attorney Woerthwein's abandonment of the law firm are "reasonable excuses" to any lack of due diligence in his prosecution of the case. In the alternative, he argues that equity requires that that

we waive the requirement of due diligence. In this respect, he contends that it would be unjust to prevent him from pursing his meritorious wrongful death/medical malpractice action against the defendants, where the dismissal of his cause of action was occasioned by attorney Miller's illness, and Woerthwein's abandonment, both of which he was completely unaware. For the following reasons, we agree.

¶ 50    It is axiomatic that "due diligence" in pursuing an action requires the plaintiff to have a "reasonable excuse" for failing to act within the appropriate time. *Airoom*, 114 Ill. 2d at 222. Because a litigant is not relieved of the consequences of his own or his counsel's mistake or negligence, he must show that the failure to diligently prosecute was the result of an "excusable mistake" and that he or his counsel acted reasonably under the circumstances and were not negligent. *Id*. There is no bright-line rule in assessing the reasonableness of the plaintiff's excuse, and the court must consider "all of the circumstances attendant upon entry of the judgment ***, including the conduct of the litigants and their attorneys." *Id.*; see also *Paul v. Gerald Adelman & Associates, Ltd.*, 223 Ill. 2d 85, 99-100 (2006).

¶ 51    However, regardless of the existence of a "reasonable excuse," courts may relax the due diligence requirement if there are mitigating circumstances. As our supreme court explained, "[o]ne of the guiding principles *** in the administration of section 2-1401 relief is that the petition invokes the equitable powers of the circuit court, which should prevent enforcement of a default judgment when it would be unfair, unjust or unconscionable." *Airoom*, 114 Ill. 2d at 225. Accordingly, "[b]ecause a section 2-1401 petition is addressed to equitable powers, courts have not considered themselves strictly bound by precedent, and where justice and good conscience may require it[,] a default judgment may be vacated *even though the requirement of due diligence has not been satisfied*." (Emphasis added.) *Id*.

14

¶ 52    "Relaxation of the due diligence requirement," however is "justified *only under extraordinary circumstances.*" *McGinley Partners, LLC*, 2018 IL App (1st) 172976, ¶ 32 (emphasis added); see also *Ameritech Publishing of Illinois, Inc. v. Hadyeh*, 362 Ill. App. 3d 56, 60, (2005). Extraordinary circumstances exist when "a party has procured an unconscionable advantage through the extraordinary use of court processes," where "'fraud or fundamental unfairness' has been shown," or "where the failure to exercise due diligence was caused by circumstances *** outside the record and *** beyond the petitioner's control." *In re Marriage of Harnack & Fanady*, 2014 IL App (1st) 121424, ¶ 60 (citation omitted); see also *Gonzalez v. Profile Sanding Equipment, Inc*. 333 Ill. App. 3d 680, 689 (2002) (Extraordinary circumstances exist, *inter alia*, "where it is necessary to prevent an *unjust* entry of default judgment." (Emphasis in original)); *European Tanspa, Inc. v. Shrader*, 242 Ill. App. 3d 103, 108 (1993) (same).

¶ 53    In the present case, we find that any failure by the plaintiff to exercise due diligence was caused by circumstances beyond his control and that therefore "justice and good conscience" required the circuit court to grant his section 2-1401 petition and vacate the dismissal of his action for want of prosecution. *Airoom*, 114 Ill. 2d at 225

¶ 54    In that respect, we note the extraordinary circumstances under which the plaintiff's case was litigated. Unbeknownst to the plaintiff, in 2018, his attorney Woerthwein misappropriated $237,000 in client settlement funds and abruptly abandoned the firm. Attorney Miller, who had just been diagnosed with advanced stage prostate cancer, which required surgery, radiation, and chemotherapy, then assumed responsibility for the plaintiff's case. At this point, the law firm was insolvent, and Miller had no associates or support staff to assist with docketing or handling any of the firm's cases.

¶ 55     Despite his illness, Miller continued to prosecute the plaintiff's case and to inform the plaintiff that his case was proceeding as scheduled. Both Miller and the plaintiff attested that in all their communications, Miller never told the plaintiff that he was ill or that the plaintiff's case was not proceeding as it should. Nor did the plaintiff have any reason to think otherwise. Within the 10 months that he represented the plaintiff, Miller vacated the 2018 order of dismissal for want of prosecution, filed the second amended complaint with the section 2-622 medical expert report (735 ILCS 5/2-622 (West 2018)), completed all written discovery, appeared at numerous management conferences, and prepared and produced the plaintiff for his deposition. In addition, one day before his failure to appear for the May 23, 2019, management conference, Miller contacted the plaintiff to ask him whether he wanted to include any additional family members as trial witnesses.

¶ 56     The plaintiff attested that he first learned of Miller's illness on June 26, 2019, after Miller informed him that his case had been dismissed for want of prosecution because of a docketing error and that he was withdrawing as the plaintiff's counsel because he had cancer.

¶ 57     The plaintiff further attested that Miller reassured him that he would be able to vacate the dismissal and reinstate the case, and that it was not until he appeared at the July 9, 2019, hearing on Miller's motion to vacate that he learned that Miller had misled him and that vacatur was impossible because Miller had failed to file the motion on time. The plaintiff averred that he immediately sought new legal representation to determine his remedies, and that he subsequently hired his present counsel, who filed the instant section 2-1401 petition only after independently determining that the plaintiff's underlying wrongful death/medical malpractice action had merit.

¶ 58     The plaintiff also attested that he was completely unaware of Woerthwein's abandonment of the law firm and the impact this had on his case. His assertion is fully supported by the ARDC

documents attached to his petition, which reveal that Woerthwein was not disbarred until May 2019, the same month that the circuit court entered the instant dismissal for want of prosecution.

¶ 59    What is more, the record irrefutably establishes that since the dismissal of the plaintiff's action, Miller has retired, and the firm of Woerthwein & Miller has been dissolved. In addition, it is undisputed that throughout his representation of the plaintiff Miller has been without legal malpractice insurance.

¶ 60    Under these extraordinary circumstances, we believe that dismissal of the plaintiff's meritorious action on a technicality, (*i.e.*, attorney Miller's failure to appear at a scheduled case management conference) would be unjust. Fairness requires that the plaintiff be given his day in court, and that he not be penalized for the brazen misconduct and serious illness of his former counsels, of which he could not have been aware, and against whom he cannot now recover. Nor should the defendants be permitted to avoid any legal liability for their purported negligence on this basis. We therefore conclude that equity requires the reversal of the circuit court's order denying the plaintiff's section 2-1401 petition. See e.g., *Ameritech Pub. of Illinois,* 362 Ill. App. 3d at 60; see also *Airoom*, 114 Ill. 2d at 225 ("Because a section2-1401 petition is addressed to equitable powers, courts have not considered themselves strictly bound by precedent, and where justice and good conscience may require it, a[final order] may be vacated even though the requirement of due diligence has not been satisfied."); *Yates v. Barnaby's of Northbrook*, 218 Ill. App. 3d 128, 130 (1991) ("although the trial court specifically found negligence and a lack of diligence on the part of the plaintiff's original and substitute counsel in prosecuting plaintiff's claim, justice and fairness may require that the judgment be vacated even though the due diligence requirement has not been met" );*Verni v. Imperial Manor of Oak Park Condominium, Inc.*, 99 Ill.App.3d 1062, 1067-68 (1st Dist. 1991) (holding that equitable principles required that

"the default judgment against the plaintiff be set aside even though there has been a lack of due diligence by the plaintiff.")

¶ 61                                  III.  CONCLUSION

¶ 62     For the aforementioned reasons, we reverse the judgment of the circuit court, and remand for further proceedings.

¶ 63     Reversed and remanded.