2022 IL App (1st) 210833-U

FIRST DISTRICT,
FIRST DIVISION
September 30, 2022

No. 1-21-0833

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

|  |  |  |
|---|---|---|
| ROBERT SYLVESTER KELLY, | ) ) ) ) ) ) | Appeal from the Circuit Court of Cook County, Illinois. |
| Defendant-Appellant, | ) ) | |
| v. | ) ) | No.19 L 1957 |
| HEATHER WILLIAMS, | ) ) ) | Honorable James Flannery, |
| Plaintiff-Appellee. | ) ) | Judge Presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Justices Hyman and Walker concurred in the judgment.

**ORDER**

¶ 1   *Held*: The circuit court's order denying defendant's petition to vacate default judgment is affirmed where defendant failed to raise a meritorious defense and establish due diligence.

¶ 2   Plaintiff-Appellee Heather Williams filed an action against Defendant-Appellant Robert Sylvester Kelly alleging childhood sexual abuse pursuant to the Childhood Sexual Abuse Act (Act) (735 ILCS 5/13-202.2) (West 2018). The court entered a default judgment against Kelly.

On appeal, Kelly argues that the circuit court erred in denying his section 2-1401 (735 ILCS 5/2-1401 (West 2020)) petition to vacate default judgment. For the following reasons, we affirm.

¶ 3                                                    BACKGROUND

¶ 4        In a complaint filed on February 21, 2019, Williams alleged that Kelly, a recording artist professionally known as "R. Kelly," sexually abused her from 1998, when she was 16 years old, until she reached the age of majority. As a result, she "developed psychological coping mechanisms and symptoms of psychological distress, including great shame, guilt, self-blame, confusion, depression, repression and dissociation." Williams sought damages for "significant harm and injury" caused by Kelly's alleged conduct.

¶ 5         On April 23, 2019, the circuit court entered a default judgment against Kelly for failing to appear, answer, or otherwise plead. On May 8, 2019, Kelly's motion to vacate the default judgment was granted and he was given an additional 28 days to answer or otherwise plead. On June 5, 2019, Kelly filed a motion to stay the civil case pending resolution of criminal charges involving the same conduct. On June 19, 2019, the circuit court entered and continued the motion to stay, and ordered Kelly "to answer or otherwise plead by June 26, 2019 or plaintiff to file a motion for default."

¶ 6        On June 26, 2019, Kelly filed a section 2-619 (735 ILCS 5/2-619(a)(5) (West 2018)) motion to dismiss, alleging that Williams' claim was barred by the two-year statute of limitations in effect under the Act at the time of the alleged conduct. 735 ILCS 5/13-202.2 (West 1993). On September 3, 2019, Kelly's motion was denied, and he was ordered to file an answer on or before October 3, 2019.

¶ 7        On October 4, 2019, Kelly filed a motion to reconsider the denial of his motion to dismiss. On October 29, 2019, the motion to reconsider was "stricken as untimely," Williams

was ordered to present a motion for default on November 12, 2019, and Kelly was ordered "to bring any motion seeking leave to file answer on [that same] date." The case was continued to November 12, 2019 for status.

¶ 8        On November 1, 2019, Kelly filed an answer in which he invoked his fifth amendment privilege against self-incrimination and again raised the statute of limitations as an affirmative defense. At a November 12, 2019 case management conference, the circuit court denied Williams' motion for default without prejudice, granted Kelly leave to file his answer instanter, and struck Kelly's affirmative defense.[1] Later that day, Kelly filed an amended answer in which he still invoked his fifth amendment privilege but did not raise any affirmative defenses.

¶ 9        On December 5, 2019, Williams filed a motion for summary judgment. On December 16, 2019, the circuit court continued Williams' motion for summary judgment and Kelly's motions to reconsider the striking of his affirmative defense and to stay the proceedings.

¶ 10        On January 22, 2020, Zaid Abdallah, Shady Yassin, and Raed Shalabi, (collectively referred to as Abdallah Law) filed a motion to withdraw as counsel of record. The certificate of service attests that a copy of the motion was hand delivered to Kelly at the Metropolitan Correctional Center (MCC) on January 23, 2019.

¶ 11        On January 28, 2020, Kelly's attorneys were allowed to withdraw and Kelly was ordered to file a supplemental appearance by February 25, 2020 or retain counsel to file an appearance on his behalf. On February 25, 2020, an order of default was entered against Kelly for his failure to

---

[1]The circuit court's order does not indicate whether Kelly's affirmative defense was stricken with or without prejudice. Kelly argues that the circuit court "struck the affirmative defense sua sponte at a case management hearing," but he has failed to include a transcript of the November 12, 2019 hearing in the record.

answer or otherwise plead, Williams' motion for summary judgment on liability was granted, and the matter was set for a prove-up hearing on March 10, 2020.

¶ 12    At the March 10, 2020 hearing, the trial court entered judgment against Kelly in the amount of $4,000,000 ($2,000,000 in compensatory damages and $2,000,000 in punitive damages). After the judgment order had been entered, Brian Nix appeared in court and was granted leave to file his appearance and a motion to vacate the judgment. The court ordered that the "motion to vacate shall be heard on April 9, 2020 at 12:00 p.m.," but no motion was filed prior to that date. On August 14, 2020, Williams began collection proceedings to enforce the judgment against Kelly.

¶ 13    On September 21, 2020, Nix filed a motion to vacate the default judgment, pursuant to 735 ILCS 5/2-1401. In an affidavit attached to that motion, Nix swore that he had "personal knowledge" that neither he nor Kelly "received any notification about any court dates or any court orders." The record does not reflect that this motion was ever presented to the court.

¶ 14    On February 10, 2021, Jordan & Zito LLC filed a "2-1401 Petition Vacate Judgment," asserting that Kelly "possesses a meritorious defense" that "Plaintiff's lawsuit is time-barred by the applicable statute of limitations" (the same affirmative defense that was stricken by the circuit court on November 12, 2019). The petition also alleged that Kelly "has a reasonable excuse for failing to defend the lawsuit" and that he "was diligent in filing this petition." Specifically, "Abdallah Law did not forward the order allowing its withdrawal to [Kelly]" because of "Nix's agreement to appear." And Kelly was unable "to retain litigation counsel or vacate" the default judgment because the "MCC restricted communications between inmates and attorneys because of the COVID-19 pandemic."

¶ 15    Two affidavits from Nix were filed in connection with the petition. In his February 9, 2021 affidavit, Nix swore that counsel for Williams never sent him a copy of the March 10, 2020 judgment order and he did not become aware of the default judgment until September 16, 2020. In his April 9, 2021 affidavit, Nix swore that he "had forgotten" that he prepared an order on March 10, 2020 granting him leave to file a motion to vacate the default judgment. Nix claimed he only "became aware that the default judgment had never been vacated" in September 2020, after Williams instituted collection proceedings. Nix also claimed that on September 22, 2020, Williams' attorney threatened to report him to the Attorney Registration and Disciplinary Committee (ARDC) if he "filed anything" or took any steps "to proceed with filing a 2-1401 petition."

¶ 16    Williams responded that the statute of limitations defense had been fully litigated and stricken by the court with prejudice. She also asserted that Kelly had failed to establish due diligence because Nix was aware that a default judgment was entered on March 10, 2020, was given leave of court to file a motion to vacate and did nothing. In addition, since Kelly "was aware of the claim against [him]," he had "an independent duty to follow the progress of the case."

¶ 17    The circuit court denied the section 2-1401 petition on June 16, 2021.

¶ 18                           ANALYSIS

¶ 19    Kelly asserts that the circuit court erred in denying his 2-1401 petition because he has a meritorious defense and had "no involvement" in the "miscommunication" between his attorneys that resulted in a default judgment being entered against him. He also argues that "it was not possible for [him] to retain litigation counsel or to vacate the judgment" within 30 days due to

the "restricted communications between inmates and attorneys because of the COVID-19 pandemic."

¶ 20        It is well established that "the appellant has the burden of presenting the reviewing court with a sufficiently complete record of the circuit court proceedings to support a claim of error." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). "Absent such a record, reviewing courts are instructed to assume that the trial court's order comported with the law and was supported by the facts, and any doubts must be resolved against the appellant." *Cruz v. Columbus-Cuneo-Cabrini Medical Center*, 264 Ill. App. 3d 633, 639 (1994) (citing *Foutch*, 99 Ill. 2d at 391-92). If no report of proceedings is available, the appellant may file a bystander's report or an agreed statement of facts. See Ill. Sup. Ct. R. 323(c), (d) (eff. July 1, 2017).

¶ 21         The record on appeal does not contain a report of proceedings, certified bystanders report, or agreed statement of facts of the hearing which resulted in the court striking Kelly's statute of limitations defense. Notwithstanding the incomplete record, we may still address the issues raised on appeal based on our review of Kelly's section 2-1401 petition, the briefs filed in relation to his petition, and the common law record. See *Cruz*, 264 Ill. App. 3d at 639-640 ("notwithstanding the inadequacy of the record, we address the issues plaintiffs raise on appeal"). We will, however, resolve "any doubts which may arise from the incompleteness of the record" against Kelly. *Foutch*, 99 Ill. 2d at 392.

¶ 22        Section 2-1401 provides a "comprehensive statutory procedure authorizing a trial court to vacate or modify a final order or judgment in civil and criminal proceedings." *Warren County Soil and Water Conservation District v. Walters*, 2015 IL 117783, ¶ 31. The petition must be filed more than 30 days, but no more than 2 years from the entry of the final judgment. 735 ILCS 5/2-1401(a), (c). "To be entitled to relief under section 2-1401, the petitioner must affirmatively

set forth specific factual allegations supporting *** (1) the existence of a meritorious defense or claim; (2) due diligence in presenting the defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief." *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986). A section 2-1401 petition is not a continuation of the original proceeding, rather, "it is a new cause of action subject to the rules of civil procedure ***." *Cavitt v. Repel*, 2015 IL App (1st) 133382, ¶ 45. We review the denial of Kelly's section 2-1401 petition for an abuse of discretion. *Warren County*, 2015 IL 117783, ¶ 51 (holding that an abuse of discretion standard applies to fact-dependent challenges to a final judgment).

¶ 23 A petitioner establishes a meritorious defense when he "alleges facts that would have prevented entry of the judgment if they had been known by the trial court." *Blutcher v. EHS Trinity Hospital*, 321 Ill. App. 3d 131, 136 (2001). "[A] defense adjudicated and rejected in the underlying action cannot be used again to satisfy the requirement of section 2-1401 that a showing be made that a meritorious defense exists." *Mt. Zion State Bank & Trust v. Weaver*, 226 Ill. App. 3d 783, 785 (1992); see also *People v. Oliver*, 2021 IL App (1st) 181605-U, ¶ 22 ("The purpose of section 2-1401 is to bring facts to the attention of the circuit court that, if known at the time of judgment, would have precluded its entry. [Citation.] A previously raised and rejected claim, by force of logic, either was known and determined not to have precluded entry of judgment or, if not known, was already deemed insufficient to preclude entry of the judgment.").

¶ 24 Kelly's petition did not "allege[] facts that would have prevented entry of the judgment if they had been known by the trial court." See *CitiMortgage, Inc.*, 2012 IL App (1st) 110626, ¶ 21. His "meritorious defense" was the same affirmative defense that was stricken in the circuit court. It is well-established that a section 2-1401 petition is " 'not designed to provide a general review

of all trial errors nor to substitute for direct appeal.' " *People v. Haynes*, 192 Ill. 2d 437, 461 (2000) (quoting *People v. Berland*, 74 Ill. 2d 286, 314 (1978)). Therefore, a 2-1401 petition is "not appropriate for review of errors of law." *Universal Outdoor, Inc. v. City of Des Plaines*, 236 Ill. App. 3d 75, 80-81 (1992).

¶ 25    Since the denial of Kelly's affirmative defense was fully "adjudicated and rejected in the underlying action," it cannot be used again to show "that a meritorious defense exists." See *Mt. Zion State Bank & Trust*, 226 Ill. App. 3d at 785 (defendant failed to raise meritorious defense where he realleged defenses struck by the lower court); see also *Halleck v. Trumfio*, 85 Ill. App. 3d 1051, 1054 (1980) (finding that plaintiff's petition, if construed as a petition to vacate "inappropriately attempts to 'relitigate that which had already been validly adjudicated' ").

¶ 26    Kelly has also failed to establish due diligence in filing his petition. Due diligence requires that the petitioner have a "reasonable excuse for failing to act within an appropriate time" and "does not afford a litigant a remedy whereby he may be relieved of the consequences of his own mistake or negligence." *Airoom*, 114 Ill. 2d at 222. While Kelly alleges that he never received a copy of the order allowing Abdallah Law to withdraw as his counsel, notice of the motion was hand delivered to him at the MCC. It is well-established that "[s]ection 2-1401 does not afford a remedy whereby a litigant may be relieved of the consequences of his own mistakes or his counsel's negligence; a litigant has the obligation to follow the progress of his case [citation], and the inadvertent failure to do so is not a ground for relief [citation.]." *Genesis & Sons, Ltd. v. Theodosopoulos*, 223 Ill. App. 3d 276, 279-80 (1991).

¶ 27    Although not permitted to meet with his attorneys in person at the MCC due to COVID-19 restrictions, Kelly was able to contact his attorneys through collect telephone calls. Nix was given leave of court to file a motion to vacate the default judgment on March 10, 2020, but failed

to do so until September 21, 2020, and even then, failed to notice the motion for hearing. Contra *Frieder v. Classic Realty Advisors Inc.*, 2021 IL App (1st) 201392-U, ¶ 20 (due diligence shown where plaintiffs filed motion for default judgment and notice regarding amended motion to default when the courts were closed and defendants were unable to acquire counsel during the COVID-19 pandemic). In any event, the negligence of his attorneys does not excuse Kelly's own failure to exercise due diligence in defending this action and/or presenting his 2-1401 petition to the court for hearing. See *KNM Holdings, Inc. v. James*, 2016 IL App (1st) 143008, ¶ 22 (noting that "defendants are bound by their attorney's actions; section 2-1401 does not provide a vessel for their rescue").

¶ 28     Kelly claims that Williams' attorney threatened to report Nix to the ARDC if he "filed anything." Williams' attorney had no opportunity to respond to these allegations because they were raised, for the first time, in Kelly's reply brief in the circuit court. Regardless, since the alleged threat did not occur until the day *after* Nix filed the motion to vacate (the motion to vacate is stamped September 21, 2020), this argument is without merit.

¶ 29     Kelly further argues that "extraordinary circumstances" warranted vacating the default judgment in this case. "[W]here justice and good conscience may require it[,] a default judgment may be vacated even though the requirement of due diligence has not been satisfied." *Airoom*, 114 Ill. 2d at 225. This rule is only invoked when "necessary to prevent an *unjust* entry of default judgment [citation], or where there is unconscionable conduct by the opposing party that would require that the due diligence requirement be relaxed [citation.]." (Emphasis in original.) *Gonzalez v. Profile Sanding Equipment, Inc.*, 333 Ill. App. 3d 680, 689 (2002); see also *KNM Holdings, Inc.*, 2016 IL App (1st) 143008, ¶ 27 (due diligence is relaxed where there is

"evidence of fraudulent conduct on the part of the plaintiff in procuring or concealing the judgment or other unusual circumstances that make enforcement of the judgment unjust").

¶ 30    As previously discussed, the COVID-19 restrictions in place at the MCC did not prevent Kelly from communicating with counsel by telephone. Moreover, Kelly had a duty to follow the progress of his case and failed to do so. See *Ameritech Publishing of Illinois, Inc. v. Hadyeh*, 362 Ill. App. 3d 56, 61 (2005) (defendant offered no reason for failing to follow the progress of his case and the "[m]ere failure of counsel [was] not sufficient reason for vacation of judgment"). Kelly has failed to show that the MCC COVID-19 restrictions constituted "extraordinary circumstances" sufficient to warrant excusing his lack of due diligence. Compare *NP SCH MSB, LLC v. Pain Treatment Centers of Illinois, LLC*, 2021 IL App (1st) 210198, ¶¶ 30-31 (finding that equity did not require relaxation of due diligence where attorney tested positive for COVID-19, but did not "elaborate on appeal on how the diagnosis affected his diligence in pursuing his defense below," did not allege he was unable to contact plaintiff's counsel or attend virtual zoom hearings, and where defendants could fully communicate with their attorneys) with *Karavos v. Northwest Community Hospital*, 2022 IL App (1st) 210383-U, ¶¶ 54-55 (finding "extraordinary circumstances" where one of plaintiff's attorneys misappropriated client settlement funds and left the firm and his other attorney was diagnosed with advanced stage prostate cancer, but continued to prosecute plaintiff's case and "never told the plaintiff that he was ill or that the plaintiff's case was not proceeding as it should").

¶ 31    Finally, Kelly argues that the circuit court erred in failing to hold an evidentiary hearing on his 2-1401 petition. Since this claim was also raised by Kelly for the first time in his reply brief in the circuit court, Williams had no opportunity to respond.

¶ 32     Where "the facts sufficient to support the grant of relief under section 2-1401 are challenged by the respondent, a full and fair evidentiary hearing must be held." *Airoom*, 114 Ill. 2d at 223. An evidentiary hearing is only required if the "controverted issues are central facts of a section 2-1401 petition." *Smith v. Cole*, 256 Ill. App. 3d 806, 810 (1993). Central facts are "those which are sufficient to support an order vacating the judgment[,] not those which must be proven to succeed in the underlying action on its merits." *Id.*

¶ 33     The only fact disputed in this case is Kelly's assertion that his affirmative defense was stricken without prejudice. Kelly argues now, as he did below, that the affirmative defense was *sua sponte* stricken without prejudice. Without an adequate record, we do not know on what basis the affirmative defense was stricken (i.e., whether it was *sua sponte* or pursuant to an oral motion or whether it was with or without prejudice). "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch*, 99 Ill. 2d at 392. Notably, on the same day that Kelly's affirmative defense was stricken, he filed another answer in which the statute of limitations was not raised, which suggests that his affirmative defense was stricken with prejudice.

¶ 34     Since the central facts of this petition were not in dispute, "the trial court did not err by [denying] the petition without an evidentiary hearing." See *Physicians Insurance Exchange v. Jennings*, 316 Ill. App. 3d 443, 458 (2000). As discussed above, Kelly's attempt to relitigate the same claim adjudicated in the circuit court is insufficient as a matter of law. See *Davis v. Chicago Transit Authority*, 82 Ill. App. 3d 987, 989 (1980)( a section 2-1401 petition to vacate "cannot be used to relitigate questions previously adjudicated by valid means. [Citation.] Nor can the provisions *** be invoked as a substitute for a timely appeal.").

¶ 35                                         CONCLUSION

¶ 36        For the foregoing reasons, we affirm the circuit court's denial of Kelly's section 2-1401 petition.

¶ 37        Affirmed.